**Eric ROTHNER d/b/a Chicago Game Co., and d/b/a Bell Vending, Inc., Plaintiff–Appellee,**

v.

**CITY OF CHICAGO, a municipal Corporation, Defendant–Appellant.**

Nos. 88–1999, 88–2690.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1989.

Decided July 5, 1989.

Kenneth Rosenburg, Lincolnwood, Ill., James A. Graham, Mayer Brown & Platt, Glenn Seiden, Seiden & Associates, Chicago, Ill., for Eric Rothner.

Judson H. Miner, Corporation Counsel, Ruth M. Moscovitch, Asst. Corporation Counsel, William B. Mackin, Jeffrey P. Smith, Office of the Corporation Counsel, Chicago, Ill., for City of Chicago.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.*

FLAUM, Circuit Judge.

These consolidated appeals, both brought by the City of Chicago, raise two questions: (1) whether an order remanding a removed case to state court on the ground that the defendant waived the right to remove prior to the running of the thirty-day time period for removal by participating in state court proceedings is reviewable under *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); and (2) whether a temporary restraining order issued by the state court prior to removal is subject to the time limitations imposed by Fed.R.Civ.P. 65(b).

I.

On March 20, 1988, Eric Rothner, a vendor and distributor of video-game machines and the owner of a video-game arcade, filed suit in state court against the City of Chicago, seeking to enjoin enforcement of the following ordinance, claiming that it violates his constitutional rights:

> No person, firm, corporation, organization, or other legal entity shall permit, and it shall be unlawful for, any person under seventeen years of age to operate any automatic amusement device, except upon the premises of the city airports, between the hours of 8:00 a.m. and 3:00 p.m. on days in which the city's public schools are in session.

Chicago Municipal Code § 104.2–10.

On April 14, 1988, before the City had answered the complaint, Rothner filed an emergency motion for a temporary restraining order ("TRO") which was heard on that day by Judge Green of the Circuit Court of Cook County. The City received less than two hours' notice prior to the hearing. An attorney from the Corporation Counsel's office appeared in court, stating that he had received the papers "a few minutes ago." Judge Green then stated that he had "never seen [this case] before." After a few moments' discussion concerning notice, Judge Green asked the City's attorney "why I shouldn't issue [a TRO]." The following colloquy ensued:

> MR. MACKIN (the City's attorney): Well, your Honor, I think on its face the ordinance is a legitimate exercise of the city's police power to regulate a legitimate need.
>
> THE COURT: Are you collecting fees on it, on the machines? Are you taking the full license fees?
>
> MR. MACKIN: I personally don't know.
>
> THE COURT: You sure do. Let the record reflect that you do. I don't live in a vacuum. You collect the fees. I know what the City Counsel is attempting to achieve.... Why don't

---

* This opinion has been circulated among all the judges of the court in regular active service because of an arguable conflict with the Fifth and Ninth Circuits. *See In re Weaver*, 610 F.2d 335 (5th Cir.1980); *Schmitt v. Insurance Company of North America*, 845 F.2d 1546 (9th Cir. 1988). A majority of the judges did not favor a rehearing *en banc*. Circuit Rule 40(f).

you stop the kids from taking the CTA out to O'Hare Field and playing the machines out there between the hours of 8:00 a.m. and 3:00 p.m.?

Based on those comments—and without hearing any argument from Rothner's attorney, nor taking any evidence, nor making any findings—Judge Green immediately and summarily ruled that the ordinance was "facially defective," "unenforceable," and "vague," and issued a handwritten order that, in effect, amounted to a grant of Rothner's motion for a TRO. The order stated "[t]hat all enforcement of this ordinance 104.2–10 are [sic] stayed until a hearing is held on May 12, 1988 at 2:15 PM."

On April 20, 1988, the City removed the case to federal court. Shortly thereafter, the City twice moved to dissolve Judge Green's "stay" of enforcement, and Rothner moved to remand the case to state court. At a hearing on April 26, the district judge summarily denied the City's first motion and stated, without explanation or findings, that the stay would "remain in effect pending determination of the motion" to remand. With regard to that motion, the district judge commented, "Why can't state courts decide Constitutional questions?" On May 26, the City filed a second motion to dissolve the stay. The district judge refused to act on this motion and apparently considered the stay to remain in effect, even though it had expired by its own terms on May 12. The City filed appeal No. 88–1999 from the district court's refusal to dissolve the stay.

Four months later, the district judge filed a written opinion granting Rothner's motion to remand, finding that the City had waived its right to remove by appearing in state court to oppose the motion for a TRO. 692 F.Supp. 916. The district judge expansively characterized the hearing before Judge Green as follows:

Defendants City of Chicago, Mayor Eugene Sawyer, Superintendent of Police Leroy Martin, and their officers and agents (collectively the "City"), after receiving proper notice of this action, appeared in state court *and vigorously opposed Rothner's motion* for a temporary restraining order. *After receiving argument from both sides,* Judge Albert Green of the state court's Chancery Division declared [the ordinance] facially defective and unenforceable. (emphasis added).

The district judge acknowledged that the City had complied with all of the statutory requirements for removal, including timely filing of its petition. The judge also acknowledged the long-settled common law rule that opposing a motion for a temporary restraining order does not waive the right to remove. Nevertheless, because the district judge believed that the City's motive for removing the case to federal court was improper, the court held that the City had waived its right to remove. The strong tone of the court's opinion evidences the district judge's animus toward the City's attempt to remove. The court wrote:

At all times prior to offering opposition to Rothner's motion, the City retained the right to remove the instant action to federal court.... Rather than following such a course, the City elected to defend Rothner's motion. It was only after receiving [an] adverse ruling and determining that Judge Green's opinion left little hope of ultimate success that the City filed its removal petition. The City asserts that its policy is to litigate all constitutional cases in federal court. One wonders, however, whether the city would be before this court had it succeeded in defeating Rothner's motion before Judge Green.

The thought that Congress could have intended litigants to use § 1441 to "test the waters" in state court before deciding whether to exercise their right to remove is simply absurd. Under such a system, a defendant, after electing to defend a removable matter in state court, is able to dissolve any adverse orders of preliminary relief by simply filing a petition to remove. Thereafter, to preserve the relief accorded by state court, a plaintiff is required to persuade a second judicial officer of his position. Thus, this practice allows a defendant to shop from

forum to forum until receiving a favorable result.

Although other courts have found that opposing a motion for preliminary relief does not effectuate waiver of the right to remove, the facts in the instant action dictate a different result. Here, the City's established policy is to "litigate all constitutional matters in federal court." Pursuant to this policy, the City immediately removes cases involving constitutional issues to ensure all matters are litigated before federal rather than state judges. The City's actions in the present case reveal a marked departure from this practice. Instead of removing the instant action, the City elected to appear in state court and oppose the motion for preliminary relief. Viewed in light of its established policy, the City's willingness to litigate the challenged ordinance's constitutionality before Judge Green clearly demonstrates an intent to waive the right to remove. The City's recently filed petition to remove this case is nothing more than a poorly disguised attempt to undermine the power of the state court to enforce its order of preliminary relief. This attempted abuse of § 1441 will not be tolerated by this court. Thus, Rothner's motion for an order remanding the cause to state court is granted.

The City filed appeal No. 88–2690 from the remand order, which the district court stayed pending our decision. Unless we reverse the order remanding the case, the appeal from the refusal to dissolve Judge Green's stay is moot, for the case would then be under the jurisdiction of the state court. Thus, we begin with the appeal from the remand, which raises the most difficult issue in the case: whether we have jurisdiction to review an order remanding a case to state court on the ground that the defendant waived the right to remove prior to the running of the thirty-day time period for removal.

## II.

We initially note that the removal and remand in this case are governed by, and

all citations are to, the provisions of the removal statutes as they appear in the 1982 edition of the United States Code. 28 U.S.C. §§ 1441 *et seq.* The recent revisions to the removal statutes effected by the Judicial Improvements and Access to Justice Act, while instructive in our analysis, are not at issue. We also note that since those revisions were enacted on November 19, 1988, this may be one of the last cases to be decided under the former statutes.

Our decision as to the reviewability and propriety of the remand order is governed by the Supreme Court's decisions in *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), and *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). In *Thermtron,* the defendants had removed a diversity case to federal court in full compliance with the jurisdictional and procedural requirements for removal set out in 28 U.S.C. §§ 1441 and 1446. Indeed, the district court's opinion acknowledged that the petitioners had properly removed the case. Nevertheless, the district judge remanded the case to state court on the ground that because his docket was crowded and diversity cases were assigned the lowest priority for available trial time, the plaintiffs would get a speedier trial in state court. While recognizing that the defendants had a statutory right to remove the action, the judge believed that the right must be " 'balanced against the plaintiffs' right to a forum of their choice and their right to a speedy decision on the merits.' " 423 U.S. at 340, 96 S.Ct. at 587. The defendants, of course, appealed.

The question before the Supreme Court was whether, in light of the prohibition on review of remand orders set out in 28 U.S.C. § 1447(d),[1] the court of appeals had jurisdiction to review the district court's order. Answering in the affirmative, the Court reasoned that the ban on review in § 1447(d) was to be construed *in pari materia* with the grounds for remand stat-

---

**1.** Section 1447(d) provides, in pertinent part: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise...."

ed in § 1447(c).[2] Reading the provisions together, the Court set out three rules pertaining to the review of remand orders. The Court first held that a district court may not remand a case to state court on discretionary grounds not authorized by § 1447(c). 423 U.S. at 345, 351, 96 S.Ct. at 590, 593. Second, the Court held that the bar against review of remand orders contained in § 1447(d) applies only to remand orders authorized by § 1447(c). *Id.* at 346, 96 S.Ct. at 590. Third, the Court held that where a district court issues a remand order on grounds not authorized by § 1447(c), the order is reviewable by writ of mandamus. *Id.* at 352–53, 96 S.Ct. at 593–94. Applying these rules, the Court found that the district court had exceeded its authority under § 1447(c) and that a writ of mandamus should issue to require the district court to entertain the remanded action.

In the subsequent case of *Carnegie–Mellon,* the Court revised the first rule and affirmed a discretionary remand based on the doctrine of pendent jurisdiction. The *Carnegie–Mellon* Court held that where a case is properly removed on the basis of federal question jurisdiction, and the federal question claim drops out of the lawsuit early in the litigation, the district court may, in its discretion, dismiss or remand any remaining pendent state law claims, even though such a remand is not authorized by § 1447(c). Thus, the Court in effect held, contrary to *Thermtron,* that § 1447(c) does not contain *all* of the permissible grounds for remand. The other

two *Thermtron* rulings were not disturbed —*i.e.,* (1) because the remand of the remaining pendent state law claims was a non-1447(c) remand, the § 1447(d) bar on review was inapplicable, and (2) the Court, after a merits review, affirmed the appellate court's denial of mandamus.

In light of these two cases, we must decide whether the remand in the instant case was authorized by § 1447(c).[3] This is not an easy task, for § 1447(c) does not enumerate specific grounds for remand. Rather, the section states that the district court shall remand those cases that were removed "improvidently and without jurisdiction." As a starting point, we note that although this phrase is worded in the conjunctive, we believe the phrase must be read in the disjunctive. To do otherwise would render the phrase redundant (lack of jurisdiction necessarily means that the case was removed improvidently) and would purportedly grant district courts authority to entertain an action where jurisdiction is lacking so long as the court determined that removal was "provident." We also note that if the instant remand is authorized by § 1447(c), it is authorized through the word "improvidently" rather than through the words "without jurisdiction," for the district court acknowledged that federal question jurisdiction existed, and the remand order was not based on a jurisdictional defect. Moreover, waiver cannot affect the subject matter jurisdiction of the federal courts. Finally, it appears from

---

**2.** Section 1447(c) provides, in pertinent part: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case...."

**3.** The dissenting opinion relies on *Lauro Lines s.r.l. v. Chasser,* —— U.S. ——, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988); and *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). In the view of the majority, these three cases shed no light on the issue of the reviewability of a remand order based on waiver. In each case, the issue was the reviewability of an order *denying* a motion to dismiss or to stay the action. The cases are analogous to the *denying* of a motion to remand —for, as the Court pointed out in those cases,

the litigation will continue in the district court and appeal can be postponed until the entering of a final judgment—but are not analogous to a *granting* of a motion to remand where the district court relinquishes jurisdiction to the state court and the opportunity to appeal in the federal system is lost. Indeed, the *Gulfstream* Court discussed the distinction between orders granting or denying a stay of litigation and pointed out that under *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), an order granting a stay of litigation is appealable under the collateral-order doctrine. *See Gulfstream,* 108 S.Ct. at 1133. In any case, however, the controlling precedents for our case are *Thermtron* and *Carnegie–Mellon,* both of which allowed review of remand orders.

*Thermtron* and *Carnegie–Mellon* that the term "improvidently" means no more than the word "improperly." *See, e.g., Thermtron*, 423 U.S. at 336 n. 15, 96 S.Ct. at 592 n. 15 ("[t]hat the word "improperly" in the old law was changed to "improvidently" in § 1447(c) ... is of no moment") and 343–44 (emphasizing that a "properly removed action" may not be remanded); *see also Carnegie–Mellon*, 108 S.Ct. at 621.

The task then is to determine whether the district court remanded the instant case in accordance with § 1447(c) as being improperly removed.[4] We perceive two approaches to this inquiry—first, by analogy to *Thermtron* and, second, by analysis of the relevant legislative history and case law—both of which lead us to the conclusion that the instant remand was not in accordance with § 1447(c) and, thus, is reviewable. We begin with *Thermtron*.

## III.

In determining that the district court exceeded its authority under § 1447(c), the *Thermtron* Court repeatedly emphasized that district courts may not remand properly removed cases "for discretionary reasons not authorized by the controlling statute." 423 U.S. at 345 n. 9, 96 S.Ct. at 590 n. 9.[5] The Court stressed that the district court had not purported to rely on the statutory grounds that removal was improper or without jurisdiction. Instead, the district judge's remand order was based on what amounted to personal, discretionary reasons—*i.e.*, that his docket was simply too crowded.

While finding that ground to be invalid under § 1447(c), the Supreme Court, on the other hand, stressed that "Congress immunized from all forms of appellate review any remand order issued on the grounds specified in § 1447(c), *whether or not that order might be deemed erroneous by an appellate court.*" *Id.* at 351, 96 S.Ct. at 593 (emphasis added). Thus, if a district court were to remand, say, on the ground that diversity jurisdiction were lacking, no matter how erroneous the decision may be, the decision is unreviewable. *See, e.g., Gravitt v. Southwestern Bell Telephone Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977); *Volvo Corp. v. Schwarzer*, 429 U.S. 1331, 97 S.Ct. 284, 50 L.Ed.2d 273 (1976).

One might wonder why the Court decided to open the door to review of the discretionary remand in *Thermtron* while adhering to the absolute ban on review of erroneous jurisdictional decisions in *Gravitt* and *Volvo*. For, as to the individual defendants, the remands were equally unfair whether based on an erroneous jurisdictional analysis or on a discretionary reason. In both situations, absent review, the defendants are denied a federal forum. While one may not be able to completely discern the underlying rationale for *Thermtron*, we can certainly understand the type of case it represented in light of the policy underlying the removal statutes.

The removal statutes grant a right to a federal forum. The motivating concern for granting that statutory right was to protect litigants against local prejudice, influence, and discrimination. If a district court judge were permitted to order a case remanded on the discretionary ground that his docket is too crowded, he would be in a position to subvert the fairness concerns

---

4. The dissent focuses attention on § 1447(d)'s ban on review and the general proposition that interlocutory orders are not immediately appealable. In the view of the majority, it is not our role to redetermine whether § 1447(d) allows review. One could forcefully argue, as did Justice Rehnquist in his dissent from *Thermtron*, that Congress intended in § 1447(d) to make *all* remand orders unreviewable. But the Supreme Court has held otherwise, and it is our duty to follow the Court. Indeed, our interpretation of the term "improvidently" in § 1447(c) must not be colored by a desire to correct the Court's interpretation of § 1447(d).

5. We know now, of course, from *Carnegie–Mellon* that district courts may remand under the discretionary doctrine of pendent jurisdiction. However, *Carnegie–Mellon* and *Thermtron* are consistent to the extent that both cases hold that such a remand is not authorized by § 1447(c) and is therefore reviewable. The point on which *Carnegie–Mellon* departed from *Thermtron* was whether a district court could exercise its inherent, non-statutory power to remand a case on common law grounds.

underlying the statutes. Although errors will inevitably occur when applying any ground for remand, the same potential for abuse is not present where the remand is based on a nondiscretionary ground such as lack of jurisdiction. We believe the rationale underlying *Thermtron* was to protect against abuses of discretion that could effect such a subversion.

*Carnegie–Mellon* is not inconsistent with that rationale. In that case, the district court was permitted to remand pendent state law claims after the federal claim dropped out of the lawsuit. Without a federal claim present, the concerns about fairness, prejudice, and discrimination lose their force. Should a court abuse its discretion with respect to exercising jurisdiction over remaining state law claims, the harm would go mainly to the interest of efficiency—an important interest, but not an interest upon which the removal statutes are based.

The facts of the instant case are very similar to the facts of *Thermtron* and invoke the same fairness concerns outlined above. As in *Thermtron,* the district judge acknowledged that the case had been removed in compliance with statutory requirements. As in *Thermtron,* the district court did not purport to rely on § 1447(c). Instead, the judge purported to rely on the common law doctrine of waiver, but, even then, he acknowledged that his decision was contrary to case law. As in *Thermtron,* the district court inappropriately balanced the plaintiff's interests against the defendant's right to remove. And, as in *Thermtron,* it is apparent from the judge's opinion and from his comment at the April 26 hearing that he simply did not want the case in his court. In addition, the district judge in essence stated that the remand was based on his distrust of the City's motives for removing. This reasoning belies the policy underlying the removal statutes. The defendant's motive for removing is not a proper consideration for remand. Every defendant who removes considers the prospect of a favorable result in the federal forum. Moreover, even if the defendant's motives could be considered, any concerns on the part of the City about

whether it would (or did) receive a fair hearing in state court are *exactly* the kinds of concerns the removal statutes were intended to alleviate.

At bottom, the district court used the common law doctrine of waiver as, in the district judge's words, "a poorly disguised" vehicle to effect a discretionary remand much like the discretionary remand in *Thermtron.* However, we must recognize that waiver itself is not, in a strict sense, a discretionary ground for remand. Rather, a waiver determination involves a factual and objective inquiry as to the defendant's intent to waive. At the same time, as evidenced in this case and as will be discussed at greater length in part IV., B., below, it is a doctrine of uncertain application, capable of great manipulation. Since *Thermtron* did not definitively explain the grounds for remand contained in § 1447(c), we may ask whether the malleable and quasi-discretionary nature of a waiver determination is sufficiently akin to the discretionary ground for remand in *Thermtron* to place it outside the realm of § 1447(c). Based on the record in this case, the factual similarities with *Thermtron,* and the perceived rationale underlying *Thermtron,* we believe the answer is yes.

## IV.

The second approach to our inquiry sheds the policy considerations discussed above and focuses on the relevant case law and legislative history. This broader approach views waiver in the abstract and analyzes the parameters of § 1447(c).

## A.

While *Thermtron* did not specify the universe of grounds for remand contained in § 1447(c), the *Thermtron* Court strongly indicated that it viewed the phrase "improvidently and without jurisdiction" to mean *noncompliance with the procedural or jurisdictional requirements stated by Congress.* Stressing the fact that the case in *Thermtron* had been properly removed, the Court repeatedly referred to the petitioner's compliance with the jurisdictional

and procedural requirements of § 1441 and § 1446. *See* 423 U.S. at 338, 339, 340, 344 n. 8, 96 S.Ct. at 586, 587, 588, 589 n. 8. In addition to these specific references to § 1441 and/or § 1446, the Court stated several times that the case had been properly removed "pursuant to" or "in accordance with" the applicable statutes. *Id.* at 340, 344, 96 S.Ct. at 587, 589. Indeed, in holding that a district court cannot remand a case on the ground that the court's docket is too crowded, the *Thermtron* Court made the following statement regarding the language of § 1447(c):

> Here, respondent did not purport to proceed on the basis that this case had been removed "improvidently and without jurisdiction." Neither the propriety of the removal nor the jurisdiction of the court was questioned by respondent in the slightest. [Footnote:] So far as the record reveals, it has not been questioned in this case that the cause is between citizens of different States, that it involves a claim of over $10,000 exclusive of interest and costs, that it is within the so-called diversity jurisdiction of the District Court and that it could have been initially filed in the District Court pursuant to 28 U.S.C. § 1331. [*These are the jurisdictional requirements contained in § 1441.*] It also seems common ground that there is *no express statutory provision forbidding the removal* of this action and that the cause was timely removed in *strict compliance with 28 U.S.C. § 1446.*

423 U.S. at 343–44 and n. 8, 96 S.Ct. at 589–90 and n. 8 (emphasis added). While this statement does not purport to be a comprehensive or exclusive interpretation of the phrase "improvidently and without jurisdiction," the implication is that the grounds for remand authorized by § 1447(c) are *statutory* grounds.

This conclusion is confirmed by Justice White's (the author of *Thermtron*) dissenting opinion in *Carnegie–Mellon.* Disagreeing with the majority's conclusion that district courts have inherent power to remand cases under the pendent jurisdiction doctrine, Justice White emphasized that "[t]here is no statutory basis for this hold-

ing." 108 S.Ct. at 614. Justice White believed that the *only* grounds for remand were *statutory* grounds, not judge-made rules.

The majority opinion in *Carnegie–Mellon* is also consistent with the conclusion that the grounds for remand authorized by § 1447(c) are statutory grounds. In stating that the case in *Carnegie–Mellon* had been "properly removed," the Court specifically referred to the petitioner's compliance with the jurisdictional requirements of § 1441. *Id.* 108 S.Ct. at 616. (The Court, understandably, did not refer to the procedural requirements of § 1446, since the ground for remand had to do with jurisdiction rather than procedure). Moreover, the majority recognized that the *lack of a statutory provision* dealing with the situation at issue *meant that Congress had not authorized* district courts to remand cases under the doctrine of pendent jurisdiction. *Id.* 108 S.Ct. at 620–21. As noted earlier, the point on which the majority and dissent differed in *Carnegie–Mellon* was whether, given that Congress had not authorized district courts to remand remaining state law claims, district courts nevertheless have the inherent power to do so. The majority and dissent were, in effect, in agreement that the lack of a statutory provision dealing with the issue meant that the ground for remand was not authorized by § 1447(c) and that the remand order was therefore reviewable.

Several courts of appeals, including this one, have similarly held that the grounds for remand under § 1447(c) are statutory grounds. In *Ryan v. State Bd. of Elections of State of Illinois,* 661 F.2d 1130 (7th Cir.1981), where the district court had remanded on the discretionary ground of abstention, we held:

> [T]he district court remanded a properly removed action for a discretionary reason not authorized by § 1447(c). The district court did not hold that it lacked jurisdiction. The only other permissible ground for remand is improvident removal. "[A] district court may remand a case as being 'improvidently' removed *only if one of the statutory, non-juris-*

*dictional requirements for removal has not been satisfied."*

*Id.* at 1133 (footnote and citations omitted, emphasis added).

The Northern District of Illinois elaborated on the *Ryan* holding as follows, an elaboration with which we agree:

At the outset, we observe that the term "provident" in § 1447(c) is not a broad invitation to this Court to decline jurisdiction simply for reasons of economy. It simply refers to basic non-jurisdictional requirements such as the posting of a bond. It is now well established that a district court cannot remand an otherwise properly removed case for discretionary or policy reasons. [citing *Thermtron* and *Ryan*] Since this case satisfies the jurisdictional and non-jurisdictional requirements of §§ 1441 and 1446, respectively, there is no basis for remanding this case.

*Elrand v. United Life and Accident Insurance Co.,* 624 F.Supp. 742, 743–44 (N.D. Ill.1985).

Further, in *Cook v. Weber,* 698 F.2d 907 (7th Cir.1983), a post-*Thermtron,* pre-*Carnegie–Mellon* case, we interpreted § 1447(c) to find that district courts could not remand pendent state law claims after the federal claim dropped out of the lawsuit. We held that "remand of removed cases must be based on specific statutory authority." *Id.* at 909. We stated that the "district courts' authority to remand removed cases is purely statutory, rather than based on inherent common law authority." *Id.* In deciding that § 1447(c) did not authorize the remand, we looked to the specific statutory requirements of § 1441(a) and found that the case had been properly removed. *Id.* at 910 and n. 6. We were, of course, proved wrong by *Carnegie–Mellon* to the extent that we prohibited any exercise of inherent common law authority—*i.e.,* remands on non–1447(c) grounds. However, our approach to § 1447(c) in both *Ryan* and *Cook*—that the remand authority granted in § 1447(c) is to be interpreted by reference to the specific statutory requirements for removal—is still the law of this circuit.

Two other circuit court cases are in accord. In *Corcoran v. Ardra Insurance Co.,* 842 F.2d 31 (2d Cir.1988), the district court had remanded on the ground of abstention. Finding the order to be reviewable, the Second Circuit stated, "the district court did not suggest that it lacked jurisdiction *or that the action had not been removed in accordance with the prescribed procedures." Id.* at 34 (emphasis added). In *In re Merrimack Mutual Fire Insurance Co.,* 587 F.2d 642 (5th Cir.1978), the Fifth Circuit could not determine from the district court's order whether the district judge had relied on non-1447(c) grounds. The circuit court seemed to conclude that the remand had indeed been on jurisdictional grounds, but that in any event it would not use mandamus to compel a district court to state unambiguous reasons. Most importantly, however, the Fifth Circuit stated, "[r]emoval cannot have been improvident if all procedural requirements, *e.g.,* timely filing, have been satisfied." *Id.* at 645 n. 3. The court concluded "that a district court may remand a case as being 'improvidently' removed only if one of the statutory, non-jurisdictional requirements for removal has not been satisfied." *Id.* at 647 n. 8.

This reading of § 1447(c) is also a logical and reasonable interpretation of congressional intent. We must presume that Congress intended the word "improvidently" to have some meaning and to in some way delimit the grounds upon which district courts can remand cases. It would be unreasonable to assume that Congress would create a statutory right of removal, and in so doing go to the trouble of laying out specific and detailed requirements for exercising that right, and then—by means of the single word "improvidently"—extend carte blanche authority to the district courts to revise the congressional scheme by remanding cases on any grounds that seem justifiable to them.[6] We note that we are not considering the pre-*Thermtron* question of whether Congress intended to

---

6. To paraphrase the words of Justice White. See 108 S.Ct. at 624 (White, J., dissenting).

allow review of remand orders. If one focuses on that question, one might ask, "did not Congress, by prohibiting review of remand orders, in effect extend carte blanche authority to district courts?" We find the answer is no, for we can assume that Congress would expect district courts to follow the provisions of the removal statutes, regardless of whether their decisions were reviewable. Thus, the prohibition on review in § 1447(d) does not translate into a granting of carte blanche authority. Assuming, then, that Congress intended the term "improvidently" to have meaning, it is logical and reasonable to interpret the term to mean noncompliance with Congress' specific and detailed statutory provisions.

The recent amendments to the removal statutes effected by the Judicial Improvements and Access to Justice Act are also instructive. Congress has revised § 1447(c) to replace the two grounds of "improvidently" and "without jurisdiction" with the grounds of "defect in removal procedure" and "lack [of] subject matter jurisdiction." Pub.L. 100–702, 102 Stat. 4642, 4670. Replacing the word "improvidently" with "defect in removal procedure"

is consistent with the view that "improvidently" draws its meaning from the procedural rules set out in the removal statutes. Indeed, the House Report accompanying the 1988 revisions specifically equates the term "improvident" as used in § 1447(c) with the phrase "defect in removal procedure" as used in the amended provision. *See* H.R.Rep. No. 100–889 at 72, U.S.Code Cong. & Admin.News 1988, pp. 5982, 6033.[7]

In sum, we find that the phrase "improvidently and without jurisdiction" means noncompliance with the procedural and jurisdictional requirements for removal stated by Congress. This interpretation is indicated by *Thermtron*, is consistent with *Carnegie–Mellon*, is in accord with prior court of appeals cases,[8] and is reasonably and logically expressive of congressional intent.[9] Accordingly, we need only separate out those requirements which relate to jurisdiction and the remaining requirements fall within the ambit of "improvidently." The non-jurisdictional requirements for removal are contained in § 1446, the section which governs the procedure for removal. Thus, the term "improvidently" is to be read as noncompliance with the

---

7. The 1988 revisions place a 30-day limit within which remand on non-jurisdictional grounds must be sought. In explaining the purpose of the amendment, the House Report states:

> Subsection (c) amends 28 U.S.C. 1447(c) and adds a new subsection (e). Section 1447(c) now appears to require remand to state court if at any time before final judgment it appears that the removal was improvident. So long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction, there is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuttling a case between two courts that each have subject matter jurisdiction.

H.R.Rep. No. 100–889 at 72 (emphasis added), U.S.Code Cong. & Admin.News 1988, p. 6033. This statement appears to include within the term "improvident" both defect in removal procedure and lack of jurisdiction, which under our disjunctive reading of the phrase "improvidently and without jurisdiction" is unnecessary. The important point is that Congress specifically links the term "improvident" to procedural defects.

We note that the dissent also claims support from the 1988 amendment, reasoning that a

motion to remand on the ground of waiver "ought to be raised ASAP," and unless we fit waiver into "defect in the removal procedure," *post* at 1421, no time limit will apply for bringing the motion. The Supreme Court long ago addressed and disposed of that problem. In *Ayers v. Watson,* 113 U.S. 594, 5 S.Ct. 641, 28 L.Ed. 1093 (1885), the Court held that non-jurisdictional objections to removal must be made promptly or they are waived.

8. We note that two court of appeals cases can be viewed as inapposite. See *Schmitt v. Insurance Company of North America,* 845 F.2d 1546 (9th Cir.1988); *In re Merrimack Mutual Fire Insurance Co.,* 587 F.2d 642 (5th Cir.1978). We will discuss these cases in part IV., C., below.

9. We note that this interpretation is also in harmony with the policy considerations discussed in the previous section. The requirements of the removal statutes are quite specific. Limiting the ban on review to those orders that are based on statutory grounds, and allowing review of orders based on judge-made rules, which are generally more malleable, provides some protection against abuses of discretion that could undermine the policy reach of the statutes.

procedural requirements of § 1446.[10]

### B.

Interpreting the term "improvidently" to mean noncompliance with the procedural requirements of § 1446 does not end the inquiry. We must now ask whether the procedural rules of § 1446—more specifically, the time requirements of § 1446(b)—can be interpreted to include the concept of waiver. This inquiry requires an examination of both the history of the time requirements of the removal statutes and the origins of the doctrine of waiver.

The Judiciary Act of 1875 required a petition for removal to be filed in the state court "before or at the term at which said cause could be first tried and before the trial thereof." Mar. 3, 1875, ch. 137, § 3, 18 Stat. 471. One of the earliest cases interpreting this provision was *Removal Cases*, 100 U.S. 457, 25 L.Ed. 593 (1879), where the question was whether the plaintiff's offer of evidence during preliminary motions in state court, and out of the ordinary course of proceedings, had started the trial. The Court stated that Congress "did not intend, by the expression 'before the trial,' to allow a party to experiment on his case in the State court, and, if he met with unexpected difficulties, stop the proceedings, and take his suit to another tribunal." The Court held, however, that an attempt by one party to get himself on the record was insufficient to start the trial. Rather, "before the trial" meant "before the trial is in good faith entered upon." *Id.* at 473.

As such, the removal petition was held to be timely filed. The quoted language regarding experimenting in state court has been often cited by subsequent courts in support of the doctrine that a party may waive the right to remove. One should keep in mind, however, that the Supreme Court was not by these words creating a judicial doctrine of waiver, but was merely interpreting the then applicable statutory time requirements for removal.

Subsequent cases further defined the parameters of the 1875 Act's time requirements. For example, in *Alley v. Nott*, 111 U.S. 472, 4 S.Ct. 495, 23 L.Ed. 491 (1884), the Court held that because a ruling on a demurrer can result in a final judgment it is considered a trial on the merits and, thus, the filing of a demurrer in state court renders a subsequent petition for removal untimely. *See also Scharff v. Levy*, 112 U.S. 711, 5 S.Ct. 360, 28 L.Ed. 825 (1884) and *Laidly v. Huntington*, 121 U.S. 179, 7 S.Ct. 855, 30 L.Ed. 883 (1887) (both holding that a demurrer in state court cuts off the time for removal under the 1875 Act). And in *Gregory v. Hartley*, 113 U.S. 742, 5 S.Ct. 743, 28 L.Ed. 1150 (1885), the Court interpreted the requirement that the petition be filed "before or at the term at which said cause could be first tried," to mean "at the first term in which the cause would stand for trial if the parties had taked [sic] the usual steps as to pleadings and other preparations." *Id.* at 746, 5 S.Ct. at 745.

The Act of March 3, 1887, revised the removal provisions in two significant re-

---

**10.** The dissent expresses concern about district courts' being forced to remand cases for failure to comply with the technical requirements of § 1446, for example, the requirement of a bond. The majority believes this concern is illusory. First, the question is not whether noncompliance with statutory requirements is a § 1447(c) ground for remand—that conclusion seems to be beyond dispute—but, rather, whether there are *additional* § 1447(c) grounds. Second, the Supreme Court long ago held that the "modal and formal" requirements of the removal statutes can be waived by failure to timely object to the defect. *Ayers v. Watson,* 113 U.S. 594, 598, 5 S.Ct. 641, 642, 28 L.Ed. 1093 (1885). Courts have relied, in part, on *Ayers* to hold that technical defects in the petition can be cured. *See Tucker v. Kerner,* 186 F.2d 79, 81–82 (7th Cir.

1950). The rationale is as follows. A technical defect such as one day's delay in posting a bond does not (unlike a failure to file within 30 days) forfeit the right to remove. For even if one were to say that the district court must remand for such a technical defect, the petition might be corrected and refiled within the statutory time period. Since the technical defect, in itself, does not forfeit the right to remove and the defendant could simply refile, there is no reason not to allow the defendant to cure the defect. Moreover, as we stated in *Tucker,* the words "accompanied by a bond" in § 1446(d) do not necessarily mean simultaneous filing of the bond. Under this interpretation, failure to simultaneously file a sufficient bond does not constitute a failure to comply with the statute and, thus, is not a statutory ground for remand.

spects. First, a provision was included allowing removal on the ground that "from prejudice or local influence [the party seeking removal] will not be able to obtain justice" in the state court. Mar. 3, 1887, ch. 373, § 2, 24 Stat. 553. Removal on a plea of failure to obtain justice could be made "at any time before the trial." *Id.* Second, all other removal petitions were to be filed "at the time, or any time before the defendant is required by the laws of the State or the rule of the State court in which such suit was brought to answer or plead to the declaration or complaint of the plaintiff." *Id.* at 554.

The uncertainty caused by the first of these provisions is illustrated in *Fisk v. Henarie,* 142 U.S. 459, 12 S.Ct. 207, 35 L.Ed. 1080 (1892). The suit in *Fisk* had been pending in the state courts for nearly four years, had been tried three times before a jury, and was about to be tried again when the defendants filed a petition for removal on a plea of failure to obtain justice. The defendants claimed that the petition was timely because filed "before the [new] trial." The Court reviewed the history of the provision at issue as follows. The Judiciary Act of 1789 required the petition for removal to be filed "at the time of entering his appearance in such state court." The Act of July 27, 1866, provided that a non-resident defendant could remove a separable controversy "at any time before the trial or final hearing of the cause." The Act of March 2, 1867, allowed removal on the ground of prejudice or local influence "at any time before the final hearing or trial of the suit." The Act of March 3, 1875, eliminated the ground of prejudice or local influence, but allowed removal in diversity cases "before or at the term at which said cause could be first tried and before the trial thereof." Finally, as shown above, the 1887 Act reinstated the ground of prejudice or local influence and allowed removal "at any time before the trial." After analyzing these various provisions to determine congressional intent—the details of which are unimportant here—the Court held that the 1887 provision meant before the *first* trial, and the petition was therefore filed too late.

Two cases illustrate the difficulties that arose from the second provision, which required the removal petition to be filed at or before the time the defendant must answer or plead in state court. In *Gerling v. Baltimore & Ohio R.R.,* 151 U.S. 673, 14 S.Ct. 533, 38 L.Ed. 311 (1894), the petition for removal was filed at a time which was, according to the complex rules of the state court, at or before the time required for answering or pleading to the merits but after the time required for making a plea in abatement attacking the jurisdiction of the state court. The Supreme Court, relying in part on the intent of Congress to contract the jurisdiction of the federal courts, held that the petition was filed too late. And in *Remington v. Central Pacific R.R.,* 198 U.S. 95, 25 S.Ct. 577, 49 L.Ed. 959 (1905), it appears that the local rules required the defendant to appear within twenty days of the service of summons, but did not require the plaintiff to file or serve its complaint within that time. The defendant timely appeared, and several months later—but still before the complaint had been served—received an affidavit from the plaintiff which showed that the amount in controversy was more than $2,000, thus making the case removable. On the next day, a motion in the case came up for hearing and was argued by defendant. Two days later the defendant filed a petition for removal. The plaintiff objected to removal on the grounds that the petition was untimely and that the defendant was estopped from removing by the fact that he had argued a motion after he became aware that the case was removable. The Court disposed of the two objections quickly, pointing out that the defendant filed the petition for removal as soon as the case became removable and that plaintiff's estoppel argument was "too technical." *Id.* at 98, 25 S.Ct. at 578.

While the specific holdings in the above cases are relatively unimportant to our inquiry, the cases illustrate the difficulties that courts encountered in interpreting the ambiguous and indefinite time requirements of the early removal statutes. The questions seemed endless. What if the de-

fendant filed a petition within the time required by the local rules to answer but had already answered? Or had litigated the validity of service? Or had moved to dissolve a preliminary injunction? Or had opposed the appointment of a receiver? What if the state court delayed in ruling on the petition during which time the defendant filed and argued additional motions? What if the state court denied the petition for removal and the defendant then continued to litigate in the state court? What if the case became removable after the time within which the local rules required an answer? Or after the trial had begun? It is no wonder that a body of law developed defining the rules of waiver.

To remedy the situation, Congress finally, in 1948 and 1949, revised the statutory scheme. By the Act of June 25, 1948, Congress provided that the removal petition shall be filed in the federal district court rather than in the state court, that a copy be promptly filed in the state court, and that all proceedings in state court cease unless and until the case is remanded. 28 U.S.C. § 1446(a) and (e).[11] The Act eliminated the "prejudice and local influence" ground for removal, see 28 U.S.C. § 1441, Historical and Revision Notes at 269, and with it went the provision that removal on that ground could be made at any time before the trial. The Act made definite the time for removal, divorcing it from the state law periods for answering or pleading, by requiring the petition to be filed within twenty days (now thirty days[12]) after the commencement of the action or service of process, whichever is later. See 28 U.S.C. § 1446, Historical and Revision Notes at 262. According to the Revision Notes, the twenty-day time period was intended "to make uniform the time for filing" and "to give adequate time and operate uniformly throughout the Federal jurisdiction."[13] Id. But Congress found

that even these revisions did not create enough certainty. Difficulties arose in states where suit was commenced by service of process but the plaintiff's complaint was not required to be filed or served until later, and in states where suit was commenced by service of summons plus filing of the complaint but with no requirement that the defendant receive a copy of the complaint. Id. In 1949, Congress cured the problem by requiring the removal petition to be filed within twenty days (now thirty) after receipt of the complaint or within twenty days (now thirty) after the service of summons if the complaint has been filed in court, whichever period is shorter. 28 U.S.C. § 1446(b). Finally, Congress added a provision to specifically allow removal at a later stage in the proceedings if the case was not initially removable but later became removable by an amended pleading, or subsequent motion. In such a case, the removal petition was to be filed within twenty days (now thirty) after the receipt by the defendant of any paper showing that the case had become removable. 28 U.S.C. § 1446(b).

Despite these extensive revisions, which seemed to obviate the need of courts to resort to judicial rules concerning waiver, those rules had by 1948 become so entrenched in the lower courts that post-1948 decisions continued to use them. Indeed, the waiver rules were accepted as black letter law by some authorities, see, e.g., 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721 at 223–25 (1985). And at least one court went so far as to ignore the 1948–49 provisions in favor of applying the pre-1948 rules. In Waldron v. Skelly Oil Co., 101 F.Supp. 425 (E.D.Mo.1951), the plaintiff began its opening statement by dismissing as to the resident defendants, thereby making the case removable. The defendant waited to seek

11. The removal statutes in the 1982 edition of Title 28 U.S.C. are, in relevant part, the same as the 1948–49 revisions.

12. By amendment in 1965, the period was lengthened to 30 days. Sept. 29, 1965, 79 Stat. 887.

13. To that end, the 1948 Act also eliminated provisions that allowed removals of civil rights cases, and cases involving revenue officers, court officers, and officers of either House of Congress, to be filed at any time "before trial or final hearing." See 28 U.S.C. § 1446, Historical and Revision Notes at 262.

removal until after the plaintiff had completed its opening statement. The district court briefly noted that under the statute the defendant had twenty days within which to remove, yet proceeded to apply pre-1948 principles to hold that the defendant had waived the right to remove by allowing the plaintiff to complete its opening statement.[14]

Other authorities, however, recognize that the 1948 revisions set definite time limits which for the most part mooted the question of waiver. *See* 1A *Moore's Federal Practice* ¶ 0.157[9] at 151 (2d ed.1987). In addition, *Moore's* specifically notes a signal from Congress contained in Federal Rule of Civil Procedure 81(c). Rule 81(c) states the time periods for answering after removal if the defendant has not already answered. According to *Moore's:*

> Amended Rule 81(c) implies that, if a removal petition is timely, the right of removal is not lost by the defendant answering or taking related steps in the state court prior to the filing of the removal petition. Such an implication is, of course consistent with *the broad purpose of the statute that a defendant have a definite, ascertainable time within which to remove.*

*Id.* (emphasis added).[15] On the other hand, *Moore's* also states that waiver of the right to remove "is still possible," but that the intent to waive must be "clear and unequivocal," *id.* at 152, and the right "is not lost by action in the state court short of proceeding to an adjudication on the merits." *Id.* at 153. Although *Moore's* states that waiver is still possible, its support for that proposition does not come from the statute. The treatise cites to district court cases which simply cite to pre-1948 cases, or back to the treatise, or to no authority at all. None of the cases contains an analysis of

whether § 1447(c) authorizes a court to remand on the ground of waiver, and, in fact, one of the cases specifically questions whether the doctrine of waiver still exists under the 1948 revision of the removal statute. *Minkoff v. Scranton Frocks,* 172 F.Supp. 870, 875 (S.D.N.Y 1959). And another states that waiver "cannot be implied." *Morgan Dallas Corp. v. Orleans Parish School Board,* 302 F.Supp. 1208, 1209 (E.D.La.1969).

In sum, it appears that the doctrine of waiver developed out of the necessity to interpret the pre-1948 removal statutes. The 1948–49 revisions addressed the problems that created the need for the doctrine, set definite time limits, and strove to make the removal process uniform throughout the federal jurisdiction. Because of the statutory ban on review, post-1948 cases that were remanded on the basis of waiver were not subjected to scrutiny. Occasionally an appeal was heard involving a refusal to remand on the ground of waiver, but there was no need prior to *Thermtron* and *Carnegie–Mellon* for these courts to question whether § 1447(c) authorized such a remand. For example, in *Perpetual Building & Loan Assoc. v. Series Directors, Etc.,* 217 F.2d 1 (4th Cir.1954), the court simply cited to pre-1948 authority to hold that seeking to dissolve a preliminary injunction in state court does not waive the right to remove, and the district court's order denying remand was thus affirmed. And in *Brown v. Demco,* 792 F.2d 478 (5th Cir.1986), the court reversed the denial of a remand petition on both statutory and waiver grounds, stating that the defendants "not only let the thirty-day period elapse, but also defended this action in state court for four years." *Id.* at 481. Clearly, the failure to comply with the statutory time limit was a sufficient ground to

---

**14.** The facts of the case are a bit odd. After the opening statement, the defendant asked the state court judge for permission to remove (even though this was not required by the statute). The judge refused and the trial was completed. The defendant then filed a petition for removal in the district court. The district court did not base its holding on these facts, however. The court clearly remanded on the grounds that defendant had waived the right to remove by allowing the plaintiff to finish its opening statement. See 101 F.Supp. at 428.

**15.** While we agree that Rule 81(c) is relevant to the inquiry and that it factors against the idea of waiver, we note that even before 1948 Rule 81(c) referred to the defendant having answered in state court. See United States Code, Title 28 (1940 ed.).

remand, and the reference to waiver can be considered superfluous. Thus, the doctrine has remained alive even though the statute does not call for it, the cases involving waiver are now few and far between, and, most importantly, the 1948–49 revisions seemed deliberately intended to eliminate it.[16] In light of this history, which reflects Congress' effort to correct ambiguities that gave rise to forfeitures of the right to remove and its desire to make uniform and certain the time period for removal while insuring that the defendant have adequate time to remove, we find that § 1446(b) cannot be interpreted to authorize remands on the ground of waiver.[17]

This is not to say, however, that district courts are without power to remand in extreme situations. One can imagine a case in which the suit is fully tried before the statutory period has elapsed and the defendant then files a petition for removal. Finding that the removal statute does not authorize a remand on the ground of waiver, and that such a remand is therefore reviewable, does not mean that the appellate court must automatically reverse the order. As we know from *Carnegie–Mellon*, § 1447(c) does not contain all of the permissible grounds for remand. Courts often supplement statutory rules with judge-made rules. For example, courts have applied the doctrines of laches and estoppel to shorten or enlarge statutory limitation periods. Courts have applied contract principles to enforce private agreements that bypass a statutory rule. In the context of removal, courts have applied contract principles to enforce forum-selection clauses and thus remand on non-statu-

tory grounds, *Clorox Co. v. United States District Court*, 779 F.2d 517 (9th Cir.1985); *Pelleport Investors v. Budco Quality Theatres, Inc.*, 741 F.2d 273 (9th Cir.1984); and have applied the doctrines of pendent jurisdiction and abstention to allow remands where all of the statutory requirements for removal have been satisfied, *Carnegie–Mellon; Corcoran v. Ardra Insurance Co.*, 842 F.2d 31 (2d Cir.1988). The authority for such remands derives not from the removal statutes but from the common law. As indicated by *Carnegie–Mellon* and *Corcoran*, the values of judicial economy, fairness, convenience and comity justify supplementation of statutory rules with common law doctrines. *Carnegie–Mellon*, 108 S.Ct. at 619–20 and n. 7; *Corcoran*, 842 F.2d at 36. The same values may justify the application of the common law doctrine of waiver. Thus, while the instances of waiver are now rare and, as *Moore's* states, occur only where the parties have fully litigated the merits, an appellate court is not precluded from reviewing a remand based on waiver.

## C.

While no other case has directly addressed the issue we have decided—whether a remand on the ground that the defendant waived the right to remove prior to the expiration of thirty days by participating in state court proceedings renders the removal improvident under § 1447(c)—a few cases have addressed related issues.

Both the Second and Ninth Circuits have held that remands based on contractual waivers contained in pre-litigation documents are not within the ambit of

**16.** The dissent points to the fact that waiver has been around for a long time and states that "the conclusion that waiver was ever lawful would show that § 1447(c) supplies the power." *Post* at 1420. The majority disagrees. Remands under the pendent jurisdiction doctrine—*i.e.*, remanding remaining state law claims after the federal claim drops out of the lawsuit—had been held lawful by some courts for a long time too. *See Murphy v. Kodz*, 351 F.2d 163 (9th Cir.1965); *Hofbauer v. Northwestern National Bank of Rochester*, 700 F.2d 1197 (8th Cir.1983); *Fox v. Custis*, 712 F.2d 84 (4th Cir.1983); *In re Romulus Community Schools*, 729 F.2d 431 (6th Cir.1984); and cases cited therein. Yet *Carne-*

*gie–Mellon* tells us that although such remands are (and were) *lawful*, they are not authorized by § 1447(c).

**17.** The dissent argues that since waiver has to do with the timing of removal we should view it as part of the "timeliness" requirements of § 1446(b). The majority believes that to take such a generic view of "timeliness" would defeat the 30-day requirement of the statute, for it would give to district courts carte blanche authority to decide whether a defendant "waited too long" despite the grant from Congress of 30 days in which to remove.

§ 1447(c). *See Karl Koch Erecting Co. v. New York Convention Center Development Corp.*, 838 F.2d 656 (2d Cir.1988) (forum-selection clause in pre-litigation contract); *Clorox Co. v. United States District Court*, 779 F.2d 517 (9th Cir.1985) (provision in employee handbook stating that suits against employer could be brought in state or federal court); *Pelleport Investors v. Budco Quality Theatres, Inc.*, 741 F.2d 273 (9th Cir.1984) (forum-selection clause in contract). In each case, the court reasoned that because the district court's decision to remand was preceded by a substantive decision of contract law, the contract question was reviewable. In addition, the *Clorox* court broadly stated, "[r]emand for waiver of a right to remove is not within the ambit of section 1447(c) which allows remand if removal was 'improvidently' granted or if the district court is 'without jurisdiction.'" 779 F.2d at 520. Because we perceive no significant difference between a contractual waiver, which requires an objective inquiry into the parties' intent, and a waiver implied by conduct, which requires an objective inquiry into the defendant's intent, we view these cases as supporting the decision in the instant case.

On the other hand, there are two cases, one from the Fifth Circuit and one from the Ninth Circuit, that seem to look in the opposite direction. We find both cases to be unpersuasive. In *In re Weaver*, 610 F.2d 335 (5th Cir.1980), the district court had appeared to remand on the ground that the defendants had waived the right to remove by seeking dissolution of an injunction in state court. Oddly, the Fifth Circuit found the district court's order to be ambiguous. Relying on *In re Merrimack Mutual Fire Insurance Co.*, 587 F.2d 642 (5th Cir.1978), the court found that it could not review an ambiguous order and, without explanation, stated that the district court must have "felt jurisdiction was lacking." The opinion is illogical and sheds no light on the meaning of "improvidently." More importantly, the opinion purports to rely on *Merrimack* which, as noted above in part IV., A., had unambiguously stated that "improvidently" means noncompliance with non-jurisdictional, statutory requirements.

In *Schmitt v. Insurance Company of North America*, 845 F.2d 1546 (9th Cir. 1988), the defendants had delayed filing for removal for two and a half years until it was established that there were no nondiverse "Doe" defendants. The district court remanded the case to state court on two grounds. First, the district court held that removal had not been precluded by the plaintiffs' naming of Doe defendants, and therefore the defendant had failed to file its petition within the thirty-day time period of § 1446(b). Second, the court held that the defendant had waived the right to remove by participating in state court proceedings during the two and a half year delay. On appeal, the Ninth Circuit held that the remand order was unreviewable, finding (1) that the district court had expressly cited to § 1447(c);[18] (2) that failure to file within the statutory time period is a ground for remand within § 1447(c); and (3) in reliance on *Weaver*, that waiver is a ground for remand within § 1447(c). We find several problems in the Ninth Circuit's opinion. First, as indicated above, the *Weaver* opinion is unsound and, if anything, stands merely for the proposition that lack of jurisdiction is a ground for remand within § 1447(c). Second, the court distinguished *Clorox* and *Pelleport* on the ground that those cases involved a question of substantive contract law without addressing the question of why a contractual waiver should be reviewable but an implied waiver should not. Third, the waiver issue was superfluous. As the court stated, remand was mandatory under § 1447(c) for noncompliance with the thirty-day requirement. 845 F.2d at 1551. Finally, the court presented no analysis of the phrase "improvidently and without jurisdiction."

It appears that Congress, too, was troubled by the situation presented in *Schmitt*.

---

**18.** *Thermtron* has been read by some courts as holding that if a district court specifically cites to § 1447(c), the remand order is unreviewable.

*See* 423 U.S. at 343, 96 S.Ct. at 589; *see also id.* at 357, 96 S.Ct. at 596 (Rehnquist, J., dissenting).

The House Report accompanying the 1988 revisions states:

> Subsection (a) amends 28 U.S.C. 1441(a) to permit the citizenship of fictitious defendants to be disregarded. This amendment addresses a problem that arises in a number of states that permit suits against "Doe" defendants.... The general rule has been that a joinder of Doe defendants defeats diversity jurisdiction unless their citizenship can be established.... This rule in turn creates special difficulties in defining the time for removal.... At worst, the result may be ... forfeiture of the removal opportunity by delay after the point that in retrospect seems to have made clear the right to remove. These problems can be avoided by the disregard of fictitious defendants for purposes of removal.

H.R.Rep. No. 100–889 at 71, U.S.Code Cong. & Admin.News 1988, p. 6032.

Just as Congress responded in 1948–49 to the ambiguities of the early removal statutes in an effort to make the time for removal uniform and certain, the 1988 House Report evidences the same concerns. The report undercuts the waiver rationale in *Schmitt.* Rather than resorting to a rule of waiver, Congress remedied the situation presented in *Schmitt* by specifically providing that Doe defendants were to be disregarded, thereby eliminating any uncertainty as to the proper time for removal. In this regard, one additional point can be drawn from the 1988 House Report. Congress has amended the statute to place a one-year limit on removal of diversity cases in situations where a case is not initially removable but becomes removable at a later stage in the proceedings. The accompanying House Report states:

> Subsection (b)(2) amends 28 U.S.C. § 1446(b) to establish a one-year limit on removal based on diversity jurisdiction as a means of reducing the opportunity for removal after substantial progress has been made in state court. The result is a modest curtailment in access to diversity jurisdiction. The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court. The elimination of parties may create for the first time a party alignment that supports diversity jurisdiction. Under section 1446(b), removal is possible whenever this event occurs, so long as the change of parties was voluntary as to the plaintiff. Settlement with a diversity-destroying defendant on the eve of trial, for example, may permit the remaining defendants to remove. Removal late in the proceedings may result in substantial delay and disruption.

H.R.Rep. No. 100–889 at 72, U.S.Code Cong. & Admin.News 1988, pp. 6032, 6033. The situations envisioned by the report (after "substantial progress in state court"; "on the eve of trial"; "late in the proceedings"; "substantial disruption") are the exact types of situations in which district courts have found waiver. If Congress had already, through the word "improvidently" in § 1447(c), mandated that district courts "shall remand" in these situations, there would be no need for the 1988 amendment. It appears that Congress is fully aware that substantial proceedings may take place in state court prior to removal and yet has *not* directed courts to remand for that reason. Rather, in keeping with its desire to make the time for removal uniform and certain, it has placed a specific limit on the removal period in diversity cases.[19]

## V.

 The remaining questions require less discussion. First, in accordance with *Thermtron,* we may treat the City's appeal from the remand order as a petition for a writ of mandamus. Second, having found the order to be reviewable we also find it to be in error. The district court's decision was, by the court's own admission, against the long-settled rule that opposing a motion for a temporary restraining order in state court does not waive the right to remove. *See Atlanta, Knoxville & Northern Ry. v.*

---

**19.** For some reason, Congress does not find that limit necessary in federal question cases, perhaps because late removals are more likely to occur in diversity cases.

*Southern Ry.,* 131 F. 657, 660–63 (6th Cir. 1904). Therefore, a writ of mandamus will issue directing the district court to entertain the action.

■ Finally, we return to the matter of Judge Green's "stay," which we will refer to as a TRO. At the latest, the TRO would have expired by its own terms on May 12, 1988. However, under Fed.R.Civ.P. 65(b) and *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed. 2d 435 (1974), the TRO in fact expired earlier. Under Rule 65(b), a temporary restraining order granted without notice may last no longer than ten days unless an extension, supported by a statement of reasons, is granted.[20] In *Granny Goose,* the Court held:

> An *ex parte* temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal.

415 U.S. at 439–40, 94 S.Ct. at 1124.

Rothner argues that *Granny Goose* does not apply because the TRO in this case was not entered *ex parte.* The argument is without merit. The City in this case received the same type of informal notice as had the defendants in *Granny Goose. See id.* at 432–33 n. 8, 96 S.Ct. at 1121 n. 8. This case was removed on April 20, 1988. Therefore, the state court's TRO expired on April 30, 1988.

### VI.

Accordingly, a writ of mandamus shall issue directing the district court to entertain the action and to conduct further proceedings consistent with this opinion.

EASTERBROOK, Circuit Judge, dissenting.

Two other appellate courts have considered whether a district judge's order remanding a case to state court on account of waiver implied from the course of litigation may be reviewed by the court of appeals. Both have answered "no". *In re Weaver,* 610 F.2d 335 (5th Cir.1980); *Schmitt v. Insurance Co. of North America,* 845 F.2d 1546 (9th Cir.1988). Today we create a conflict. Circuits should not strike off on their own on jurisdictional questions without powerful reasons. *Newman–Green, Inc. v. Alfonzo–Larrain,* —— U.S. ——, ——, 109 S.Ct. 2218, 2220, 104 L.Ed.2d 893 (1989); *FDIC v. Elefant,* 790 F.2d 661, 665–66 (7th Cir.1986). We don't have one, for 28 U.S.C. § 1447(d) supports the Fifth and Ninth Circuits as strongly as a text ever does: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise ...".

Section 1147(d) fortifies principles that defer review of orders allocating cases among forums. Orders transferring cases from one court to another or declining to do so, orders compelling arbitration, and the like are not appealable because they do not conclude the litigation. E.g., *Lauro Lines s.r.l. v. Chasser,* —— U.S. ——, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 1952–54, 100 L.Ed.2d 517 (1988); *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 1136–38, 99 L.Ed.2d 296 (1988). That remand orders in particular are not appealable has been settled since 1872. See *Insurance Co. v. Comstock,* 83 U.S. (16 Wall.) 258, 270, 21 L.Ed. 493 (1872); *Railroad Co. v. Wiswall,* 90 U.S. (23 Wall.) 507, 23 L.Ed. 103 (1874), neither of which depended on the predecessors to § 1447(d). See also, e.g., *McLaughlin v. Hallowell,* 228 U.S. 278, 286, 33 S.Ct. 465, 468, 57 L.Ed. 835 (1913). Remands may be reviewed, if at all, by mandamus, an extraordinary remedy requiring a correspondingly extraordinary justification—such as lack of power to act. Error in the exercise of

---

**20.** Fed.R.Civ.P. 65(b) provides: "Every temporary restraining order granted without notice ... shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period.... The reasons for the extension shall be entered of record."

admitted power won't do. *Kerr v. United States District Court*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976).

My colleagues lack a powerful argument driven by a statute; they have instead an ingenious argument to avoid a statute. Novel as well as ingenious: neither party to this case nor any other judge has advanced it. The argument goes in four steps.

First, the Supreme Court held in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), that § 1447(d) does not mean what it says, that it forbids appellate review only when the remand was authorized by § 1447(c), which speaks of cases removed "improvidently and without jurisdiction". Because the majority in *Thermtron* believed that the sets "remands authorized by § 1447(c)" and "lawful remands" are identical, *Thermtron* would require us to decide whether cases ever may be remanded on account of waiver. If yes, appellate review is barred in every case. *Gravitt v. Southwestern Bell Telephone Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). Courts have been remanding on account of waiver for more than a century, without a peep from Congress. *The Removal Cases*, 100 U.S. 457, 473, 25 L.Ed. 593 (1879) (dictum); *Karl Koch Erecting Co. v. New York*, 838 F.2d 656 (2d Cir.1988); *Texas Wool & Mohair Marketing Ass'n v. Standard Insurance Co.*, 175 F.2d 835 (5th Cir.1949); *Atlanta, Knoxville & Northern Ry. v. Southern Ry.*, 131 F. 657, 660–63 (6th Cir.1904) (Lurton, J.). The majority does not deny that waiver is a lawful ground of remand. So *Thermtron* does not authorize appellate review in our case.

Step Two. In *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), over the dissent of the author of *Thermtron*, the Court broke the link between "lawful remands" and "remands authorized by § 1447(c)". *Carnegie–Mellon* left us with three categories of grounds for remand: (1) those authorized by § 1447(c) and beyond the power of appellate review; (2) those not authorized

by § 1447(c) but nonetheless lawful in principle and reviewable for error in execution (the example from *Carnegie–Mellon* is a remand of a pendent state claim after deciding the federal claim that authorized the removal); (3) those not authorized by § 1447(c) or anything else, and subject to automatic reversal (the example from *Thermtron* is a remand of a suit the district court thinks it is too busy to hear). After *Carnegie–Mellon* we must decide whether waiver makes removal "improvident" so that § 1447(c) authorizes remand. For the century prior to *Carnegie–Mellon*—when only grounds given by § 1447(c) allowed remand—the conclusion that remand for waiver was ever lawful would show that § 1447(c) supplies the power. *Carnegie–Mellon* did not change the source of the power to remand on account of waiver. I would reach this point and stop, dismissing the appeal. My colleagues go on to

Step Three. When is removal "improvident" within the meaning of § 1447(c)? One attractive possibility is that removal is "improvident" whenever a case is "not removable on the day the petition is filed". Waiver fits that bill, quite unlike a case such as *Carnegie–Mellon* in which removal was proper and remand was justified by subsequent events. The majority takes a different tack, however, equating "improvident" with defective procedures. Section 1446 establishes hoops through which a petitioner must jump, and my colleagues conclude that *only* the failure to take a step required by § 1446 makes removal "improvident" under § 1447(c).

Step Four is identifying the requirements of § 1446. That statute does not mention waiver. Section 1446(b), though, insists that the petition be timely. Waiver rules originated in cases dealing with timely removal. Courts said "waiver" when they concluded that counsel had waited too long to remove, given what was happening in state court (maj. op. at 1412–16). Despite this history, the majority concludes that waiting too long to remove is not the kind of timeliness demanded by § 1446(b), so that delay (= waiver) cannot make removal

"improvident" within the meaning of § 1447(c).

Steps One and Two follow higher authority. Steps Three and Four are of our own choosing. They are not demonstrably wrong-but they are not demonstrably right, either. Step Three, equating "improvident" with "failure to do what § 1446 demands", does not flow from the text or history of § 1447(c). Section 1447(c) does not refer to § 1446; the removal provisions as a whole lack definitions of key terms; nothing in the legislative history of the statute mentions the relation, if any, between § 1446 and § 1447(c). Step Four, excluding waiver from the timeliness requirement of § 1446(b), also lacks support in text or history.

Without pretending assurance, I think we err in adopting Steps Three and Four. "Improvident" implies more than "procedurally defective"; in ordinary usage something is "improvident" if it ought not have been done. A case removed at a time when *either* substantive or procedural rules block that step has been removed "improvidently". If so, Step Three is incorrect. More than just ordinary language undermines Step Three. Section 1446(d) requires a bond to accompany the petition for removal. If "improvident" means "out of compliance with § 1446", then any case unaccompanied by a bond *must* be remanded (§ 1447(c) says that the court "shall remand" cases removed improvidently). Yet why should one day's delay in posting a bond forfeit the right to remove? Many courts, including ours, hold that the bond may be supplied as soon as the omission comes to light, *Tucker v. Kerner*, 186 F.2d 79 (7th Cir.1950); see also, e.g., *Climax Chemical Co. v. C.F. Braun & Co.*, 370 F.2d 616 (10th Cir.1966), *National Quick-silver Corp. v. World Insurance Co.*, 139 F.2d 1 (8th Cir.1944), though under the majority's position all such cases must be remanded. So too with any other technical defect-for example, failure to serve a copy of the original pleading with the petition to remand, § 1446(b), or failure to verify the petition, § 1446(a) although these are poor grounds on which to forfeit the privilege of removal if quickly rectified.[1]

My colleagues rely on the 1988 revision of § 1447(c), Judicial Improvements and Access to Justice Act of 1988, Pub.L. 100–702, 102 Stat. 4642 (1988). This statute supports my approach rather than theirs. Consider the problem of timeliness. The new version refers to motions to remand "on the basis of any defect in removal procedure" and then distinguishes between cases removed without subject-matter jurisdiction, which may be remanded at any time before final judgment, and others, which may be remanded only if a motion is made within 30 days of the removal. Congress treated "defect in removal procedure" as synonymous with "improvidently and without jurisdiction" and redrafted the section only to create the different time limits. See H.R.Rep. No. 100–889 Part I, 72 (1988), U.S.Code Cong. & Admin.News 1988, p. 6033. Is a remand on the ground of untimely removal one based on a "defect in the removal procedure" under the new version of the statute? Yes, I hope, for it would be senseless to review such decisions on appeal while not reviewing other closely related judgments. Untimeliness in state court ought to be raised ASAP in federal court. Unless we treat timeliness as a "defect in the removal procedure", no time

---

1. *Ryan v. State Board of Elections*, 661 F.2d 1130, 1133 (7th Cir.1981), is not so much inconsistent with this perspective as it is inconsistent with *Carnegie-Mellon*. *Ryan* concluded that only the grounds specified in § 1447(c) permitted remand, a position that has now been rejected. The district judge in *Ryan* had remanded a case on the ground of abstention. It didn't take much effort to jettison that, and the holding (as opposed to the rationale) that you can't "abstain" by remanding a case doubtless survives *Carnegie-Mellon*. The language in *Ryan* that the majority quotes was not only unnecessary to the disposition but also not inconsistent with the position that an order remanding on account of waiver sensibly could be characterized as a conclusion that the removing party waited too long in light of the progress of the litigation. Timeliness is one of the subjects covered by § 1447(c). Too, the only source for the language in *Ryan* is a decision of the Fifth Circuit —which has since held, in *Weaver*, that an order remanding on account of waiver is unreviewable under § 1447(d). If we go by patrimony, the unreasoned assertion in *Ryan* does not counsel against following *Weaver*.

limit will apply to bringing the point to the district court's attention. Yet once we conclude that untimely removal is a "defect in the removal procedure", it must follow that waiver too may be such a defect. For waiver inferred from conduct is a conclusion that the defendant *waited too long* in light of events taking place in state court. Waiver of the sort we are examining is a conclusion that the defendant's time ran out in advance of the limit in the statute. So viewed, it is a defect in removal procedure covered by both the current and the former versions of § 1447(c).[2]

No matter what one makes of the majority's arguments for Steps Three and Four, however, the question remains: why struggle against § 1447(d)? We are not caught in a pinch between sound judicial administration and faithful execution of the statute. The policy behind § 1447(d) is that interlocutory review of decisions allocating cases among forums delays proceedings—this appeal has delayed proceedings—without resolving or even advancing the resolution of the merits. All of the rationales that constrict interlocutory review apply to orders allocating cases among tribunals, and § 1447(d) makes pellucid what ought to have been clear in its absence. *Thermtron* responded to the problem of the lawless judge, one who said in effect: "the law be damned, I can do what I want if there is no review". It created a categorical rule limiting the *reasons* for remand. *Carnegie-Mellon* responded to the problem that the adjudication of claims properly pendent to a federal claim might be deferred or jeopardized if remand were impossible, and nothing in § 1447(c) says that "improvidently and without jurisdiction" are the only grounds of remand. Steps One and Two serve understandable functions. No similarly strong reason supports Steps Three

and Four. Although courts strain against the limits of their authority when the reasons seem pressing (here, because the majority is convinced that the remand was mistaken and the judge wrong to allow the interim relief to continue in force), jurisdictional rules apply to future cases too. District judges rarely remand cases in error. After today's decision, however, many cases must come to a halt pending appellate review, although the great majority will not be afflicted with error. Disputation over the identity of the right forum will stall litigation that ought to proceed to decision.

Even with § 1447(d) cleared away, we *still* don't have appellate jurisdiction. As *Thermtron* holds, 423 U.S. at 352–53, 96 S.Ct. at 593–94, it is mandamus or nothing. Mandamus depends on a demonstration of want of power, and the majority does not believe that the district judge lacked power to remand on account of waiver. My colleagues believe that the judge erred in the exercise of a power he possesses, which does not support an extraordinary writ. E.g., *Mallard v. United States District Court*, —— U.S. ——, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989); *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Kerr*.

Unreviewable remands may deprive defendants of a federal forum to which they are entitled. Review of remands certainly delays the completion of litigation and increases its expense. How to accommodate these two kinds of costs? One way is to say "tough luck, but the decision of a single judge is all the subject calls for". Four judges may be too many, or too slow, for particular decisions. Think of the "right" not to undergo expensive discovery—or for

---

**2.** Two courts hold that waivers contained in pre-litigation documents are not encompassed by § 1447(d). See *Clorox* and *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273 (1984), both from the Ninth Circuit, and two cases from the Second Circuit, *Karl Koch* and *Corcoran v. Ardra Insurance Co.*, 842 F.2d 31 (2d Cir.1988). These cases treat remands based on contractual provisions as preliminary dispositions of the merits and therefore outside the scope of § 1447(c). *Schmitt*

distinguished *Clorox* and *Pelleport* on these grounds when holding that waiver inferred from conduct in state court is within § 1447(c). 845 F.2d at 1549–50. We needn't arbitrate this contrariety but, if Step Three is justified, then the distinction may be supported on the ground that waiver during litigation is a question of timeliness under § 1446(b), while waiver in pre-litigation documents may not be so characterized.

that matter the right in *Lauro Lines* to litigate in Italy rather than New York. An entitlement to litigate in one court rather than another may be valuable, but it is not so important that the case should come to a halt while an appellate court examines the claim. As Justice Scalia said, concurring in *Lauro Lines*, 109 S.Ct. at 1980, "the right is not sufficiently important to overcome the policies militating against interlocutory appeals." Even a grievous error does not authorize appellate review. *Gravitt* holds exactly this concerning § 1447(d).

Another approach is to allocate the risk of error according to the value attached to the claim, a legislative task on which Congress embarked. Section 1447(d) contains an exception. If the removal is based on 28 U.S.C. § 1443, the civil rights removal statute, then remands are appealable immediately. In cases covered by § 1443, the plaintiff who wanted to be in state court bears the costs of delay; in all other cases, the defendant who wanted to be in federal court bears the risk of error while both sides obtain a faster final disposition. Chicago does not contend that § 1443 supplied authority for removal. Perhaps Congress ought to prefer the person claiming the right to the federal forum—much of the majority's rationale, maj. op. at 1407–08, is based on the supposition that this is the optimal allocation—but the statute does not read that way.

Although my colleagues hint darkly that the district judge may have remanded the case because of hostility to removal by governmental defendants, rather than for the stated reason, Chicago disclaimed at oral argument any contention that the judge's reasons were other than those he gave. I am unaware of a pattern of ques-

tionable remands by Judge Bua; we have no basis on which to doubt the candor of his description of reasons for remanding. The case presented by the parties and the record is one of remand because of waiver, nothing else.[3]

*Thermtron* and *Carnegie–Mellon* do not launch the federal courts on a trajectory producing ever-more appellate review. Gravity brings legal trends back to ground, just as it ends the flight of a knuckle ball. Even after a surprising and "liberating" construction of a law, decisions still must be founded on the statute rather than on projections from the first case. The problem is familiar:

> [T]he Court, having already sanctioned a point of departure that is genuinely not to be found within the language of the statute, finds itself cut off from that authoritative source of the law, and ends up construing not the statute but its own construction. Applied to an erroneous point of departure, the logical reasoning that is ordinarily the mechanism of judicial adherence to the rule of law perversely carries the Court further and further from the meaning of the statute. Some distance down that path, however, there comes a point at which a later incremental step, again rational in itself, leads to a result so far removed from the statute that obedience to the text must overcome fidelity to logic.

*NLRB v. Electrical Workers*, 481 U.S. 573, 597–98, 107 S.Ct. 2002, 2016–17, 95 L.Ed.2d 557 (1987) (Scalia, J., concurring). See also *Hickey v. Duffy*, 827 F.2d 234, 242–43 (7th Cir.1987). Neither precedent nor logic compels us to move farther and farther from the text of § 1447(d). Abhorrence of interlocutory review of procedural issues

---

**3.** A belief that plaintiffs should be entitled to litigate constitutional claims against local governments in state court is not unreasonable, even if it is not a proper ground for remand. A battery of doctrines funnels constitutional cases *to* state courts, or requires federal judges to abstain, certify issues, or defer to state courts' decisions; state and local governments also enjoy in federal courts immunity defenses and the shield of the eleventh amendment, which complicates litigation in federal court and may deny the plaintiff a remedy available in state court.

Constitutional analysis often could be avoided by clarification of state and local law, a task that state courts can perform and federal courts cannot. If the plaintiff wants to pursue constitutional litigation in state court, it is hard to see why he should be frustrated. Yet 28 U.S.C. § 1445, which sets limits on removals, does not preclude a state or local government from removing a case of this kind. Until Congress revises § 1445, Chicago is entitled to a federal forum unless it waived the privilege.

ought to lead us to carry out the rule laid down in the law. Two courts of appeals have done this. So should we.