Rex FATE, Plaintiff,

v.

**BUCKEYE STATE MUTUAL INSURANCE CO.,**
Defendant.

No. 1:01–CV–359.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 12, 2001.

David A. Feeback, Edris Brown Johnson and Feeback, Bluffton, IN, S. Daniel Weldy, III, Fort Wayne, IN, for plaintiff.

Craig R. Patterson, Matthew J. Elliott, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, for defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

On October 3, 2001, Defendants Buckeye State Mutual Insurance Co. (hereinafter "Buckeye") filed a "Notice of Removal," removing the instant action from the Wells County Circuit Court to this Court. Plaintiff Rex Fate (hereinafter "Fate") filed "Plaintiff's Objection to Removal to Federal Court" on October 30, 2001, which the Court construes as a motion to remand the cause to the Wells County Circuit Court. At a preliminary pre-trial conference, this Court asked the parties to brief the issues of whether Buckeye's removal was timely and whether Buckeye, by participating in state court proceedings in this cause for almost an entire year, had waived its right to seek removal. Buckeye filed its brief on November 19, 2001, to which Fate responded on December 3, 2001. For the following reasons, Fate's motion to remand will be GRANTED.

## FACTUAL BACKGROUND

On October 10, 2000, Fate, a resident of Wells County, Indiana, filed his "Complaint for Damages" in the Wells Circuit Court, Cause No. 90C01–0010–CP–160. In that complaint, Fate alleged the following facts: On July 9, 1999, Fate's residence was struck by lightning, causing extensive damage to the electrical system as well as certain personal property in the residence.

Buckeye, an Ohio corporation, was Fate's insurer, and Fate immediately contacted Buckeye to obtain payment for his loss. Buckeye sent Fate $834.94 in partial payment of Fate's claims. However, Buckeye refused to cover Fate's claim for the damage to the entire electrical system in Fate's house, a claim that exceeded the $40,000.00 policy limit. As a result, Count I of Fate's complaint seeks $40,000.00 plus the costs of this action in compensation for Buckeye's alleged breach of contract. In Count II of his complaint, Fate alleges Buckeye handled his claim in bad faith. Accordingly, Count II seeks punitive damages "in an amount consistent with Indiana law," and asks that the costs of this action be assessed against the defendant.

On March 2, 2001, Buckeye filed a "Motion to Stay and/or Dismiss Count I of Plaintiff's Complaint and to Stay Discovery on Count II of Plaintiff's Complaint." The parties appeared, by counsel, and argued the merits of Buckeye's motion in the Wells Circuit Court on April 26, 2001. That Court denied Buckeye's "Motion to Stay and/or Dismiss Count I of Plaintiff's Complaint" and allowed Buckeye to withdraw its motion to stay discovery on Count II. On June 5, 2001, Buckeye moved to bifurcate the trial, arguing that Plaintiff should not be allowed to proceed on Count II of Plaintiff's Complaint until a ruling on the merits of Count I was rendered. The Wells Circuit Court denied Buckeye's motion on August 14, 2001, following a hearing on the matter.

On August 22, 2001, during the course of discovery, Buckeye issued several requests for admissions and interrogatories to Fate. Fate's response on September 11, 2001 admitted that he was seeking more than $75,000.00 in damages and, more specifically, indicated that he would seek the following amounts:

1. $40,000.00 as required by Plaintiff's contract of insurance with the Defendant.

2. $160,000.00 in punitive damages as allowed by Indiana Code 34–51–3–4.

3. Court costs, attorneys fees, and prejudgment interest as allowable by Indiana law.

4. Any punitive damages awarded in excess of the statutory limit of $160,000.00.

Buckeye contends that it first ascertained that the amount-in-controversy requirement for federal diversity jurisdiction was satisfied when it received Fate's response to its discovery requests. Thereafter, Buckeye filed the "Notice of Removal" now at issue in this Court.

## STANDARD OF REVIEW

Generally, the party seeking a federal forum has the burden of establishing that jurisdiction in the federal courts is appropriate. *See Wellness Community–National v. Wellness House*, 70 F.3d 46, 49 (7th Cir.1995). Indeed, when a federal court's exercise of jurisdiction is challenged following removal, the burden of establishing federal jurisdiction rests on the party seeking to preserve removal. *See Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir.1993); *P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Insurance Co.*, 395 F.2d 546, 548 (7th Cir. 1968) ("The burden of proof as to any material issue is upon the party who removed to show that the suit was properly removed.") Moreover, the standard for removal as applied to a removing defendant is more exacting than as applied to a plaintiff asserting diversity jurisdiction in the initial pleadings. *See Pratt, Bradford & Tobin, P.C. v. Norfolk & Western Ry. Co.*, 885 F.Supp. 1126, 1130 (S.D.Ill.1994). In short, any doubts regarding jurisdiction should be resolved in favor of remanding

the action to state court. *See Bush v. Roadway Express, Inc.,* 152 F.Supp.2d 1123, 1125; *Tom's Quality Millwork, Inc. v. Delle Vedove USA, Inc.,* 10 F.Supp.2d 1042, 1044 (E.D.Wis.1998).

## DISCUSSION

### I. Timeliness

28 U.S.C. § 1446(b) governs the procedure for removal of a state court action. Specifically, this section provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant ... of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.... If the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of [diversity] jurisdiction ... more than one year after the commencement of the action.

Thus, a defendant has thirty days from the date it receives a plaintiff's complaint in which to remove the case to federal court. After that thirty days, a defendant may only file a notice of removal if the case subsequently becomes removable.

Buckeye argues that it did not become aware that this case was removable until it received Fate's responses to its discovery requests, specifying that the damages sought exceeded $75,000.00. Thereafter, Buckeye argues, it filed its notice of removal within the requisite thirty days and before the one-year time limit for diversity cases had expired. Although no courts in this circuit have considered the issue, several other district courts have held that a defendant is on notice that the case is removable even though the complaint does not specifically list damages in excess of the federal jurisdictional amount. For example, in *McCraw v. Lyons,* 863 F.Supp. 430 (W.D.Ky.1994), the court held that the initial pleading commenced the removal period, even though the pleading did not specify the amount of damages sought. The complaint asserted that it sought compensatory damages as well as punitive damages. However, in accordance with state practice, the pleading did not specify an *amount* of damages. The court held that the complaint had adequately put the defendant on notice that the case involved more that $50,000.00 in damages—the federal jurisdictional amount at the time. *See McCraw,* 863 F.Supp. at 434. To demonstrate removability where the pleading does not specify an amount of damages, the court reasoned, the defendant need only show that it is more likely than not that the case will exceed the jurisdictional threshold for diversity. *See id.* Moreover, the court stated that a defendant was free to file interrogatories simultaneously with its notice of removal and/or seek a stay for limited discovery should plaintiff subsequently move to remand. *See id.* at 435; *see also Century Assets Corp. v. Solow,* 88 F.Supp.2d 659 (E.D.Tex.2000); *Horak v. Color Metal of Zurich,* 285 F.Supp. 603 (D.N.J.1968); *but see Smith v. Bally's Holiday,* 843 F.Supp. 1451 (N.D.Ga.1994).

■ Here, as in *McCraw,* plaintiff Fate was not permitted to specify the amount of punitive damages he sought in his complaint. Rule 8 of the Indiana Rules of Trial Procedure states, "[I]n any action seeking ... punitive damages, no dollar amount or figure shall be included in the demand." Fate's complaint did, however, state that he was seeking punitive damages "in an amount consistent with Indiana

law." Under Indiana law, punitive damages are limited to three times the amount of compensatory damages awarded, or $50,000.00, whichever sum is greater. *See* Ind.Code 35–51–3–4. Accordingly, Buckeye should have been on notice that the amount-in-controversy requirement for diversity jurisdiction may have been satisfied when it received Fate's original pleading. As the court explained in *McCraw*, Buckeye could have filed a notice of removal immediately. With the information Buckeye had, Buckeye could plausibly argue that it was more likely than not that Fate was seeking more than $75,000.00. Accordingly, the removal period ran out thirty days after Buckeye first received Fate's complaint. Removal at this late stage in the litigation is untimely.

This resolution of this issue encourages defendants to file their notices of removal as soon as it becomes likely that the amount-in-controversy requirement will be satisfied, rather than wait until discovery is conducted. Certainly, this result promotes efficiency by placing a lawsuit in the court which will ultimately decide the case as soon as possible, thereby eliminating duplicitous proceedings. In addition, it prevents defendants, unhappy with adverse state court rulings, from taking a "second bite at the apple" in federal court.

## II. Waiver

Prior to 1989, courts in the Seventh Circuit had held that under certain circumstances, a defendant will be deemed to have waived his right to removal. To constitute a waiver of the right to removal, however, courts required "a clear and unequivocal waiver on the part of the defendant." *Kiddie Rides USA, Inc. v. Elektro–Mobiltechnik GMBH*, 579 F.Supp. 1476, 1479 (C.D.Ill.1984). Generally, if a defendant sought some affirmative action or relief in state court, he was considered to have waived his right to removal. *See Kiddie Rides*, 579 F.Supp. at 1479; *Baker v. National Boulevard Bank*, 399 F.Supp. 1021, 1022 (N.D.Ill.1975) (stating that participating in the merits of a lawsuit constitutes waiver of removal rights, while taking part in preliminary action, such as pleading, does not). Although not binding on this Court, the following language from *Heafitz v. Interfirst Bank of Dallas*, 711 F.Supp. 92, 96 (S.D.N.Y.1989) is instructive: "[I]f a [defendant's] motion seeks a disposition, in whole or in part, of the action on its merits, the defendant may not attempt to invoke the right to remove after losing on the motion." Thus, before 1989, courts in the Seventh Circuit permitted remand to state court on the basis that a defendant had waived his right to removal.

In 1989, however, the Court of Appeals for the Seventh Circuit decided *Rothner v. City of Chicago*, 879 F.2d 1402 (7th Cir. 1989). That case involved a civil action brought in state court seeking to have a city ordinance declared unconstitutional. The defendants in that case removed to federal court after the state court judge issued a temporary restraining order. The Circuit Court was asked to review the propriety of the removal. Writing for the Court, Judge Flaum began by examining the applicable removal statute, 28 U.S.C. § 1447(c). That statute provided, in pertinent part: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case...." Examining the relevant case law and legislative history, the Seventh Circuit concluded that the federal removal statutes could not be interpreted to allow remand on the basis of waiver.

*Rothner's* analysis, however, became obsolete when Congress subsequent-

ly revised the removal statutes. In 1988,[1] Congress rewrote § 1447(c) to read as follows:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded....

Thus, the 1988 amendment deleted the language interpreted in the *Rothner* opinion and established time limits in which plaintiffs could file objections to removal based either on "any defect in removal procedure" or on lack of subject matter jurisdiction. In 1996, however, Congress substituted "any defect other than lack of subject matter jurisdiction" for "any defect in removal procedure." The 1996 amendment, then, demonstrates that Congress contemplated that many different challenges to removal—not only procedural or jurisdictional challenges—would be made. Therefore, § 1447(c), as it currently stands, only places a time limit on when challenges to removal can be made; it does not limit the kinds of challenges that can be brought. This is further evidenced by the broad language Congress used—an objection based on "*any* defect other than lack of subject matter jurisdiction" (emphasis added) can be made within thirty days after a notice of removal is filed.[2] Certainly, waiver—or a defendant's failure to remove the case before it has been considered at length in state court—qualifies as a defect in a defendant's attempt to remove a case.

As a result, this Court concludes that *Rothner's* interpretation of § 1447(c) is inapposite to this case. Rather, the subsequent amendments to § 1447(c) evidence Congress's intent to authorize a broad spectrum of challenges to removal, including waiver. Indeed, since 1996, at least one other circuit and several district courts have approved of remand on waiver grounds. *See Johnson v. Heublein,* 227 F.3d 236, 244 (5th Cir.2000); *McKnight v. Ill. Cent. R.R.,* 967 F.Supp. 182, 186 (E.D.La.1997); *Fain v. Biltmore Securities, Inc.,* 166 F.R.D. 39, 40 (M.D.Ala. 1996); *Chavez v. Kincaid,* 15 F.Supp.2d 1118, 1125 (D.N.M.1998). *Rothner* itself even left the door open to certain waiver challenges. *See Rothner,* 879 F.2d at 1416. Therefore, the Court finds that remand on the basis of waiver is available in certain circumstances.

■ The question, then, becomes whether Buckeye has waived its right to remove by litigating this case in state court. The Court believes it has. Buckeye has certainly taken affirmative action in state court by moving to dismiss the

---

1. The 1988 revisions to § 1447(c) had already been enacted at the time *Rothner* was decided. The *Rothner* court, however, construed the earlier version of the statute. *See Rothner,* 879 F.2d at 1405.

2. House Report 104–799 further supports this reading of the statute. It states, in relevant part:

> In the Judicial Improvements and Access to Justice Act of 1988, Congress required that a "motion to remand the case on the basis of any defect in removal must be made within 30 days after the filing of the notice of removal under section 1446(a)." The intent of this amendment was to impose a 30–day limit on all motions to remand except in those cases where the court lacks subject matter jurisdiction. The intent of the Congress is not entirely clear from the current wording of 28 U.S.C. § 1447(c), and it has been interpreted differently by different courts. S. 533 clarifies the intent of Congress that a motion to remand a case on the basis of any defect other than subject matter jurisdiction must be made within 30 days after the filing of the notice of removal....

882

case and attempting to bifurcate the issues. The intent of these motions was not to merely defend against plaintiff's claims, but to dispose of the case altogether. Moreover, as discussed in the previous section, from the time of the initial complaint, Buckeye was on notice that the amount-in-controversy requirement may be met. Rather than immediately investigate further to determine whether the case was removable, Buckeye chose to seek dismissal of the case in state court and to litigate in state court for nearly one full year. Only when the state court denied its motions did Buckeye remove the case to this Court. Because Buckeye sought affirmative action in state court before removing to federal court, it evidenced an intent to litigate in state court. Accordingly, Buckeye waived its right to remove this case to federal court.

█ Buckeye argues that allowing remand on the basis of waiver is "in tension with 1446(b)'s provision that certain matters be removable up to a year after the commencement of the action. Congress surely realized that in many matters, significant litigation would occur [in state court] within a year after the filing of suit." Defendant's Supplemental Memorandum in Opposition to Plaintiff's Motion to Remand, p. 2. To the contrary, the legislative history of section 1446(b) indicates that Congress was concerned about the elimination of parties making diversity jurisdiction appropriate for the first time in litigation. House Report 100–889, the report accompanying the 1988 amendments to the removal statutes, stated, in relevant part:

[Section 1446(b) ] establish[es] a one-year limit on removal based on diversity of jurisdiction as a means of reducing the opportunity for removal after substantial progress has been made in state court. The result is a modest curtail-ment in access to diversity jurisdiction. [Section 1446(b) ] addresses problems that arise from a change of parties as an action progresses toward a trial in state court. The elimination of parties may create for the first time a party alignment that supports diversity jurisdiction. . . .

Thus, the one-year limitation in § 1446(b) was enacted to deal with the event that a diversity—destroying defendant is dismissed or settled out of the lawsuit. It was not intended to allow defendants to litigate cases in state court for up to a year and then remove the case to federal court, especially in cases where, as discussed above, the removing defendant was on notice that the case was removable much earlier in the litigation.

Given the untimeliness of Defendant's removal, its filing of dispositive motions in state court, and the fact that this Court is to resolve all doubts in favor of remand, the Court is satisfied that this cause should be remanded to the Wells County Circuit Court.

## CONCLUSION

Plaintiff Rex Fate's motion to remand this case is hereby GRANTED. This case is REMANDED back to the Wells County Circuit Court.