In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-1171

ROCK HEMP CORP.,

*Plaintiff-Appellant,*

*v.*

ADAM DUNN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 21-cv-00408 — **James D. Peterson**, *Chief Judge.*

ARGUED SEPTEMBER 21, 2022 — DECIDED OCTOBER 11, 2022

Before FLAUM, SCUDDER, and KIRSCH, *Circuit Judges.*

FLAUM, *Circuit Judge.* Appellant, Rock Hemp, contracted
with an entity called CBDINC to purchase 6,000 hemp seeds.
CBDINC is a fictitious business name used by Appellees,
Adam Dunn, Ryan Davies, and Shawn Kolodny. The contract
contains an arbitration clause requiring "[a]ny dispute arising
out of this Agreement" be resolved through "binding arbitra-
tion" in Denver, Colorado. Disappointed with CBDINC's
hemp seeds, Rock Hemp sued Appellees individually, not

CBDINC, in Wisconsin state court. After Rock Hemp made clear to Appellees that the amount in controversy exceeded the jurisdictional minimum, Appellees removed the case to federal court and filed a motion to dismiss the case for failure to comply with the arbitration clause. In response, Rock Hemp filed a motion to remand pursuant to 28 U.S.C. § 1447. The district court granted Appellees' motion to dismiss, denied Rock Hemp's motion to remand, entered judgment in favor of Appellees, and denied Rock Hemp's subsequent motion for reconsideration under Federal Rule of Civil Procedure 60. Rock Hemp appeals these rulings. For the following reasons, we affirm the judgment of the district court.

## I. Background

In its operative state court complaint, Rock Hemp alleged that CBDINC is a business name or d/b/a through which Appellees conduct their business and Appellees sold the seeds in question. Rock Hemp originally brought nine contract and tort claims against Appellees, including breach of contract. After Appellees filed a motion to dismiss, Rock Hemp amended its complaint, leaving six counts remaining: fraudulent representation; negligent, intentional, and strict liability misrepresentation; and breaches of implied and express warranty. Neither complaint specified the amount of damages sought, only that it was "an amount to be determined, plus prejudgment interest, all taxable costs and fees, actual attorneys['] fees, [and] exemplary and/or punitive damages as applicable." Appellees filed a motion to dismiss the amended complaint.

At a status conference on May 10, 2021, the state court determined that Appellees' motion to dismiss would be converted into a motion for summary judgment but reserved ruling on the substance of the motion. Instead, the court permitted the parties to engage in discovery and ordered them to file motions for summary judgment supported by affidavits after discovery closed.

On June 15, 2021, the day before the deposition of Rock Hemp's owner, counsel for Rock Hemp emailed Appellees' counsel stating Rock Hemp was seeking $250,000 in damages. Seven days later, on June 22, 2021, Appellees removed the case to the United States District Court for the Western District of Wisconsin. There, Rock Hemp filed a motion to remand, and Appellees filed a motion to dismiss for improper venue. The district court found that Appellees timely exercised, and did not waive, their right to removal, and accordingly denied Rock Hemp's motion to remand. In the same order, it granted Appellees' motion, finding Rock Hemp's claims were subject to arbitration. After the district court entered final judgment for Appellees, Rock Hemp filed a Rule 60 motion for reconsideration. The district court denied that motion the next day, concluding Rock Hemp inappropriately raised new evidence and arguments in the motion. This appeal ensued.

## II. Discussion

### A. Motion to Remand

We review de novo a district court's denial of a motion to remand. *Sarauer v. Int'l Ass'n of Machinists, Dist. No. 10*, 966 F.3d 661, 668 (7th Cir. 2020).

### 1. *Timeline for Removal*

Section 1446 sets out the requirements for removing a case filed originally in state court. 28 U.S.C. § 1446. If a case is removable based on the initial pleading, "the notice of removal 'shall be filed within 30 days after the receipt by the defendant … of a copy of the initial pleading setting forth the claim for relief.'" *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 823 (7th Cir. 2013) (alteration in original) (quoting § 1446(b)(1)). However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3). When the thirty-day clock starts is not "a fact-intensive inquiry about what the defendant subjectively knew or should have discovered through independent investigation." *Walker*, 727 F.3d at 825. Rather, "the clock commences *only* when the defendant receives a post-complaint pleading or other paper that affirmatively and unambiguously specifies a damages amount sufficient to satisfy the federal jurisdictional minimums." *Id.*

Rock Hemp contends that removal was untimely because its state court complaints put Appellees "on notice that Rock Hemp's claims exceeded the jurisdiction[al] amount" of $75,000, and more than thirty days expired between when the complaint was filed and when Appellees removed the case. While Rock Hemp admits it did not "specify the specific dollar amount it was seeking," it points out that the complaints "alleged deficiencies in the 6,000 seeds purchased from appellees (which appellees knew from their own invoice were purchased for $6,020)" and claimed "attorneys' fees, exemplary

damages, punitive damages and prejudgment interest." Rock Hemp argues that Appellees were on notice of the amount in controversy more than thirty days before removal because the Wisconsin punitive damages statute provides that "[p]unitive damages received by the plaintiff may not exceed twice the amount of any compensatory damages recovered by the plaintiff or $200,000, whichever is greater." Wis. Stat. § 895.043(6). On these bases, Rock Hemp claims the thirty-day clock expired long before Appellees filed their notice of removal on June 22, 2021.

In *Walker v. Trailer Transit, Inc.*, this Court clarified what triggers the start of the thirty-day time limit for removal. 727 F.3d at 823–26. At issue was when, if ever, the clock starts where the plaintiff never "specifically disclos[ed] the damages demand" to the defendant, but instead, the defendant "based its notice of removal on its own estimate of damages." *Id.* at 821. The plaintiff in *Walker* argued that the thirty-day window expired because the defendant was able to "'first ascertain[]' that the … theory of damages could result in recovery of more than" the jurisdictional minimum from the complaint, which alleged plaintiffs were "entitled to 71% of [the defendant's] 'profits.'" *Id.* at 820–21. After attempting to clarify with plaintiffs' counsel the meaning of "profits," defense counsel performed its own calculation of damages and supported its notice of removal with an affidavit. *Id.* at 822. This Court concluded the thirty-day clock never started because the defendant never received "a pleading or other litigation paper facially revealing … the damages sought." *Id.* at 823–26. The plaintiffs' claim to 71% of the defendant's profits was insufficient to trip the switch because it "did not affirmatively specify a damages figure." *Id.* at 825.

Like the plaintiff in *Walker*, Rock Hemp did not specify the amount of damages sought in either of its state court complaints. While Rock Hemp asserts that Appellees "could have sought to learn the amount in controversy months before they did, through discovery or simply asking," *Walker* makes explicit that inquiry into the subjective knowledge of the defendant and assessment of what the defendant should have discovered is improper. *Id.* It is also not reasonable to conclude that Appellees should have assumed the amount in controversy threshold was met based off their knowledge that the seeds cost $6,020, even in light of Rock Hemp's punitive damages claim. In fact, the punitive damages statute Rock Hemp cites sets a ceiling, not a floor, for punitive damage awards in Wisconsin and therefore does not "affirmatively and unambiguously reveal[] that the predicates for removal are present." *Id.* at 824.

Rock Hemp contends that *Walker* is distinguishable and points to *Fate v. Buckeye State Mutual Insurance Co.*, a pre-*Walker*, Northern District of Indiana case. 174 F. Supp. 2d 876 (N.D. Ind. 2001). In *Fate*, the plaintiff filed a complaint in state court against his insurance company seeking coverage for damages to his home as a result of a lightning strike. *Id.* at 877–78. In his complaint, he sought $40,000 plus costs as well as an unspecified amount of punitive damages. *Id.* at 878. Discovery commenced after the defendant's motion to dismiss was denied, and the defendant learned through the plaintiff's discovery response that he was seeking more than $75,000 in damages. *Id.* The defendant filed a notice of removal less than thirty days later, but the court found removal was untimely because the defendant "should have been on notice that the amount-in-controversy requirement for diversity jurisdiction may have been satisfied when it received Fate's original

pleading" more than thirty days earlier. *Id.* at 878, 880. Rock Hemp argues that we should apply *Fate* and find the thirty-day clock began running "as soon as it be[came] likely that the amount-in-controversy requirement w[ould] be satis-fied"—in any event, more than thirty days before Appellees filed their notice of removal. *Id.* at 880. We disagree.

*Fate* is distinguishable and does not displace this Circuit's precedent in *Walker*. First, the *Fate* plaintiff was constrained by the Indiana Rules of Trial Procedure, which do not permit plaintiffs to specify the amount of punitive damages sought. *Id.* at 879–80; *see also* Ind. R. Trial P. 8(A)(2) ("[I]n any com-plaint seeking … punitive damages, no dollar amount or fig-ure shall be included in the demand."). Rock Hemp analo-gizes this to Wisconsin statute § 802.02(1m)(a), which prohib-its a plaintiff from specifying the amount of money damages sought in relation to a tort claim, arguing it was similarly barred from articulating a damages figure in its complaint. This argument falls short, however, because both Rock Hemp's complaints—even its amended complaint, which omitted the breach of contract claim—asserted contract-based claims to which § 802.02(1m)(a) does not apply. *See* Wis. Stat. § 802.02(1m)(a) ("With respect to a tort claim seeking the re-covery of money, the demand for judgment may not specify the amount of money the pleader seeks."); *Sweet Dreams Un-limited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993) ("We have routinely held that a party may not avoid a contractual arbitration clause merely by casting its complaint in tort." (citation and internal quotation marks omitted)).

Second, *Walker* articulated the difference between when "a case becomes removable" and when "the 30–day removal

clock begins to run." 727 F.3d at 824. *Fate* conflated these concepts, concluding that the clock began to run because the defendant had a basis to file a notice of removal. 174 F. Supp. 2d at 880. However, to file a notice of removal, a defendant "need only show that it is more likely than not that the case will exceed the jurisdictional threshold for diversity." *Id.* at 879. *Walker* makes clear that the thirty-day deadline only begins to run when the plaintiff "affirmatively and unambiguously specifies a damages amount sufficient to satisfy the federal jurisdictional minimums." 727 F.3d at 825. The two events do not necessarily coincide.

The first time Rock Hemp "specifically disclose[d] the amount of monetary damages sought" was on June 15, 2021 in an email to Appellees' counsel. *Id.* at 824. Therefore, the district court correctly found that removal was timely, since Appellees filed their notice of removal less than thirty days later, on June 22, 2021.

### 2. *Waiver of Right to Removal*

Rock Hemp argues that even if Appellees' removal was timely, they waived their right to removal by litigating the case in state court, specifically by filing motions to dismiss, requesting a status conference, and participating in a hearing on the motion to dismiss. Appellees counter that they filed their motions to dismiss to avoid entry of a default judgment and that the state court did not rule on their motions.

This Court has not revisited the subject of waiver of the right to removal since *Rothner v. City of Chicago*, 879 F.2d 1402 (7th Cir. 1989). The context of *Rothner* was an appeal from "an order remanding a removed case to state court on the ground that the defendant waived the right to remove prior to the

running of the thirty-day time period for removal by partici-
pating in state court proceedings." *Id.* at 1403. Much of this
Court's opinion dealt with whether we had jurisdiction to re-
view such an appeal under a prior version of 28 U.S.C.
§ 1447(d). *Id.* at 1405–07. After concluding that the issue was
reviewable, we went on to hold that "§ 1446(b) cannot be in-
terpreted to authorize remands on the ground of waiver." *Id.*
at 1407, 1416. Reaching that conclusion, this Court reasoned
that the waiver doctrine developed to overcome issues with
the pre-1948 version of the removal statute, which the later
version solved by "set[ting] definite time limits" for removal.
*Id.* at 1415. We explained "cases involving waiver are now few
and far between, and, most importantly, the 1948–49 revisions
[to the removal statute] seem[] deliberately intended to elim-
inate it." *Id.* at 1416. This Court concluded that waiver of the
right to removal may still be found under "the common law
doctrine of waiver … only where the parties have fully liti-
gated the merits" of the case in state court. *Id.*

Since *Rothner*, Congress amended § 1447 again and in do-
ing so deleted the language we interpreted to find that the ap-
peal was reviewable. Rock Hemp claims *Rothner* is no longer
good law in light of this revision and points this Court again
to *Fate*. The *Fate* court found that these revisions to § 1447
made *Rothner* "inapposite to [the] case" and thus held that the
defendant waived its right to removal by litigating the case in
state court for nearly a year, including arguing a motion to
dismiss, conducting discovery, and moving to bifurcate trial.
174 F. Supp. 2d at 878, 881–82. However, the post-*Rothner*
amendments to § 1447 did not impact *Rothner*'s conclusion
that "§ 1446(b) cannot be interpreted to authorize remands on
the ground of waiver." *Rothner*, 879 F.2d at 1416. This conclu-
sion primarily relied on Congress's imposition of definite

time limits in the removal statutes in 1949, *Rothner*, 879 F.2d at 1415–16, and § 1446(b) has not substantively changed since then, *see* 28 U.S.C. § 1446(b) (requiring notice of removal to be filed "within 30 days after the receipt by the defendant" of the triggering document). Indeed, unlike the court in *Fate*, "most district courts in this Circuit have continued to follow *Rothner* and have held that filing motions to dismiss or taking other preliminary actions in state court does not constitute waiver of the right to remove." *Perez v. Air & Liquid Sys. Corp.*, 223 F. Supp. 3d 756, 760 (S.D. Ill. 2016) (collecting cases). Therefore, the district court correctly concluded that this portion of *Rothner* remains good law. Today we reiterate that "§ 1446(b) cannot be interpreted to authorize remands on the ground of waiver." *Rothner*, 879 F.2d at 1416.[1]

Furthermore, the district court in this case correctly concluded that under the common law doctrine of waiver, Appellees did not waive their right to removal. Even the *Fate* court described waiver as a high bar, noting that to constitute waiver, a case must be "considered *at length* in state court" and the defendant's state court actions must demonstrate "a clear and unequivocal waiver." 174 F. Supp. 2d at 880, 881 (emphasis added). Appellees' decision to file motions to dismiss and begin discovery does not evince a clear and unequivocal intent to remain in state court, particularly where

---

[1] The text of Federal Rule of Civil Procedure 81 comports with this decision. It explains "[a]fter removal, repleading is unnecessary unless the court orders it. A defendant who did not answer before removal must answer or present other defenses or objections under these rules." Fed. R. Civ. P. 81(c)(2). As this Court explained in *Rothner*, Rule 81 intimates that removal is not waived by the defendant filing an answer in state court prior to filing a notice of removal. 879 F.2d at 1415.

they had to file an answer or dispositive motion to avoid default judgment and where, at the time, they had no reason to believe that any other jurisdiction was available to them. *See, e.g., Havoco of Am., Ltd. v. Sumitomo Corp.*, 971 F.2d 1332, 1337 (7th Cir. 1992) ("Waiver is an express or implied voluntary and intentional relinquishment of a *known and existing right*." (emphasis added) (citation and internal quotation marks omitted)). Moreover, contrary to Rock Hemp's position, the state court did not rule on the merits of Appellees' motion to dismiss; it merely converted the motion to one for summary judgment and reserved ruling on its substance. Therefore, Appellees' actions do not constitute "fully litigat[ing] the merits" of the case in state court. *Rothner*, 879 F.2d at 1416.

For these reasons, we affirm the district court's denial of Rock Hemp's motion to remand.

## B. Motion to Dismiss

Rock Hemp also appeals the district court's grant of Appellees' motion to dismiss. While Appellees brought their motion pursuant to Rule 12(b)(3) for improper venue, as the district court recognized, the doctrine of *forum non conveniens* is the correct "procedural mechanism to enforce [an] … arbitration clause." *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*, 7 F.4th 555, 560 (7th Cir. 2021). We review motions under the *forum non conveniens* doctrine for abuse of discretion. *Id.* at 561. While the parties cite de novo as the appropriate standard of review, our conclusion would not change even under that, more rigorous, standard.

The parties' contract contains an arbitration provision, which provides:

> Any dispute arising out of this Agreement (a "Dispute") shall be resolved solely according to the procedures set forth in this section. The parties shall first negotiate in good faith to attempt to resolve the Dispute, including escalation to representatives of each party at least one level higher in their organizations. If the Dispute is not so resolved within 30 days, either party may initiate mediation. If the parties are unable to the resolve the Dispute(s) by mediation, then either party may initiate binding arbitration of such Dispute(s). The binding arbitration shall be initiated and conducted according to the JAMS Comprehensive Arbitration Rules and Procedures, including the Optional Appeal Procedure provided for in such rules (the "Arbitration Rules"). The arbitration shall be conducted in Denver, Colorado before a single neutral arbitrator appointed in accordance with the Arbitration Rules.

A court must enforce an arbitration clause where (1) there is a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate. *Druco Restaurants, Inc. v. Steak N Shake Enterprises, Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). Since neither party disputes the choice of law, and both cite Wisconsin law, we "apply the law of the forum state"—Wisconsin. *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002).

### 1. *Legal Status of CBDINC*

Rock Hemp argues that its contract with CBDINC is void, and thus there is no valid agreement to arbitrate, because

CBDINC is a d/b/a, and, it asserts, "dba's are prohibited from entering into valid contracts." This proposition is incompatible with Wisconsin law.

Wisconsin courts have held that "[t]he designation, 'd/b/a' means 'doing business as' and is merely descriptive of the person or corporation who does business under some other name; it does not create or constitute an entity distinct from the person operating the business." *Jacob v. W. Bend Mut. Ins. Co.*, 553 N.W.2d 800, 805 n.7 (Wis. Ct. App. 1996). A Wisconsin appellate court expounded on this conclusion in *Binon v. Great Northern Insurance Co.*, concluding that a d/b/a "has no *independent* legal status or significance." 580 N.W.2d 370, 374 (Wis. Ct. App. 1998) (emphasis added). In *Binon*, the court held that an insured, Arrow Motors, qualified as a motor vehicle handler under a statute because it "sells, leases, services and repairs motor vehicles" both under its own name and through d/b/a designations. *Id.* at 372. It reached this conclusion even though the actions of its d/b/a entity, Lease Associates Group, were at issue, and that d/b/a was not a motor vehicle handler because it exclusively leased vehicles. *Id.* at 374. The court held that it was appropriate to "look to all the activities and services of … [the insured,] Arrow Motors, not merely the activities of its leasing division, Lease Associates Group." *Id.* at 374. That is because a d/b/a "does not create or constitute an entity distinct from the person operating the business." *Id.*

More recently, the Wisconsin Supreme Court harmonized the reasoning in *Binon* and *Jacob*. It held that "if the name under which a person or corporation does business is 'simply another way to refer to' a single legal entity and constitutes no entity distinct from the person or corporation who does

business, then a judgment against the 'doing business as' name is enforceable against the legal entity from which it is indistinct." *Paul Davis Restoration of S.E. Wis., Inc. v. Paul Davis Restoration of Ne. Wis.*, 831 N.W.2d 413, 422 (Wis. 2013). The court described this conclusion as "consistent with the approach taken on this question by the majority of other jurisdictions that have addressed it." *Id.* at 415. While the context of this case is different, the Wisconsin Supreme Court's reasoning is applicable and confirms that, under Wisconsin law, when a d/b/a enters into a contract, the actual legal entity entering into the contract is the person or corporation acting through the d/b/a.[2]

In contrast to Rock Hemp's assertion that d/b/as or fictitious entities cannot enter into a contract, Wisconsin law dictates that not only can such an entity enter into a contract, but the real actor behind the fictitious name can enforce the contract, seek remedies, and is responsible for judgments. Furthermore, Rock Hemp does not allege that it was confused or deceived about who it was contracting with. *See Howells v. Albert*, 236 N.Y.S.2d 654, 657 (N.Y. App. Div. 1962) ("The use of an assumed name, if not employed for deceitful or dishonest

---

[2] The district court relied on an out-of-circuit case that reached the same conclusion. *Premier Finishes, Inc. v. Maggirias* involved a construction lien sought by Premier Finishes after it entered into a contract with a homeowner under a fictitious business name, PFI Construction. 130 So. 3d 238, 243 (Fla. Dist. Ct. App. 2013). The court found Premier Finishes was "entitled to proceed with the claim of lien" even though the contract named PFI Construction. *Id.* at 241, 243. The court reasoned that "[a] contract entered into under a fictitious name is valid and enforceable" and "the real entity that uses the fictitious name when entering into the contract is the actual party to the contract." *Id.* at 241.

purposes, is legal."). In fact, it alleged in its complaint that "[r]egardless of any reference to the non-existent 'CBD, Inc.,' it was the [Appellees] who sold the seeds as described below to Rock Hemp Corp." and, consistent with that assertion, Rock Hemp sued Appellees instead of CBDINC.

Finally, Rock Hemp claims Appellees do not have standing to enforce the contract between Rock Hemp and CBDINC because the contract was not signed by Appellees on behalf of CBDINC, but instead by another individual, Matt Kahn. As an initial matter, Kahn's signature does not appear on the contract. Rather, his name and email address are listed as the person who created the seed order form (which is part of the contract) on behalf of CBDINC. Moreover, the lack of signature on behalf of CBDINC does not impact the validity of the contract given that nothing in the contract indicates a signature was required. *See Chudnow Const. Corp. v. Com. Discount Corp.*, 180 N.W.2d 697, 698 (Wis. 1970) ("So far as the common law is concerned, the making of a valid contract requires no signature unless the parties have made them necessary at the time they express their assent and as a condition modifying that assent."). Moreover, it is undisputed that "[t]he three named [Appellees] were the alleged members of CBD, Inc.," the entity that Rock Hemp contracted with, and they sold the seeds to Rock Hemp using the d/b/a CBDINC. Thus, like the district court, we reject Rock Hemp's contention that Appellees lack standing to enforce the contract.

Since the allegations in the complaint make clear that CBDINC was not a distinct legal entity from the Appellees, and Rock Hemp does not allege it was confused or deceived by use of the d/b/a, the district court correctly concluded that

the contract is valid and Appellees have standing to enforce it.

### 2. *Fraudulent Inducement*

Rock Hemp claims the entire contract, including the arbitration clause, is void because it was induced to enter into the agreement by Appellees' material misrepresentations regarding the quality of the hemp seeds. However, Rock Hemp does not claim that it was fraudulently induced into agreeing to arbitrate. That dooms its argument.

The Supreme Court, in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, held that a party cannot avoid an arbitration clause by claiming the entire contract was fraudulently induced. 388 U.S. 395, 404 (1967) ("[T]he statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."). In contrast, "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Id.* at 403–04. This Court later emphasized that "courts will not allow a party to unravel a contractual arbitration clause by arguing that the clause was part of a contract that is voidable, perhaps because fraudulently induced." *Colfax Envelope Corp. v. Loc. No. 458–3M, Chicago Graphic Commc'ns Int'l Union*, 20 F.3d 750, 754 (7th Cir. 1994).

Because Rock Hemp does not claim it was induced into agreeing to arbitrate, *Prima Paint* is controlling. Rock Hemp only alleges that Appellees fraudulently misrepresented the quality of the seeds sold. These alleged misrepresentations do not vitiate the formation of the arbitration clause. Therefore, "the issue of the contract's validity [must be] considered by

the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

### 3. *Scope of Arbitration Agreement*

Rock Hemp does not claim that, should an enforceable agreement to arbitrate be found, its claims fall outside the scope of the agreement. The parties also do not dispute that Rock Hemp refused to arbitrate its claims, satisfying the final two requirements for a court to enforce an arbitration clause. *Druco Restaurants, Inc.*, 765 F.3d at 781 ("To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration."). Thus, the district court did not err by granting the motion to dismiss, more accurately styled as a motion under the doctrine of *forum non conveniens*.

### C. Rule 60 Motion

Last, Rock Hemp appeals the district court's denial of its Rule 60 motion for reconsideration. Rule 60(b) provides a pathway for a litigant to seek relief from a final judgment, order, or proceeding for several reasons, including "newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Neither in the district court nor on appeal did Rock Hemp specify which section of Rule 60 it invoked. However, the district court interpreted Rock Hemp's request as a Rule 60(b)(2) motion and denied it because Rock Hemp attached and cited new declarations in support of its motion and did not justify "why it could not have presented its new arguments and evidence earlier."

Rock Hemp claims that its "motion was based upon the same arguments [it] raised" previously in the district court. It also complains that in addition to "fail[ing] to even consider the arguments contained within the Motion for Reconsideration, the district court ignored [its] demand for a jury trial," as renewed in its Rule 60 motion. However, Rock Hemp did not explain how the declarations qualify as "newly discovered evidence" under Rule 60(b)(2) or fit into any other subsection of Rule 60, and it cited no law to support its argument. Seventh Circuit precedent is clear that "perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). Rock Hemp's opening brief contains only two sentences concerning the motion for reconsideration, with no citations and thin argument. This is not sufficient to preserve a claim on appeal.

Even if Rock Hemp had fully developed its argument, denials of Rule 60(b) motions are reviewed "under 'an extremely deferential abuse of discretion standard.'" *In re Cook Med., Inc.*, 27 F.4th 539, 542 (7th Cir. 2022) (quoting *Eskridge v. Cook Cnty.*, 577 F.3d 806, 808 (7th Cir. 2009)). It is a "formidable challenge" to demonstrate "that the court abused its discretion in denying relief under Rule 60(b)." *Eskridge*, 577 F.3d at 807. Applying this standard of review, the question "is not whether the district court might have decided differently, but whether the court's denial of the [] Rule 60(b) motion was unreasonable." *Id.* at 810.

While the district court ruled quickly and succinctly in a minute order entered the day after Rock Hemp filed its Rule 60 motion, the court reasonably concluded that the motion

"raise[d] several new arguments … and cite[d] new declarations to support the motion." The court cited two Seventh Circuit cases for the proposition that Rule 60 motions do not permit litigants to raise new arguments or evidence—including new affidavits. *See, e.g.*, *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) (where plaintiffs submitted a new affidavit in support of a Rule 60 motion the court was "not obliged to consider" it because "[i]t is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him"). A review of Rock Hemp's briefing in the district court reveals it raised at least one new argument in its Rule 60 motion—that Appellees did not have a Wisconsin seed labeler's license. This is the type of new argument, supported by new evidence in the form of declarations, not permitted under Rule 60 absent a showing that the evidence could not have been discovered earlier. *See Bumphus v. UniQue Personnel Consultants*, 805 F. App'x 427, 429 (7th Cir. 2020) (holding the district court properly denied a Rule 60(b) motion where the movant failed to assert that they "could not with diligence have acquired [the new evidence] … sooner.").

Moreover, Rock Hemp's strategy to renew its demand for a jury trial in its Rule 60 motion does not make the court's prior ruling reviewable where the district court granted Appellees' motion to dismiss. By granting the motion to dismiss, the district court concluded that no claims remained to be tried by a jury. *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404, 408 (7th Cir. 1945) (noting "triable issue[s]" of fact cannot "be decided on a motion to dismiss"). The district court's denial of the Rule 60 motion was far from unreasonable.

### III. Conclusion

For the reasons explained above, we AFFIRM the judgment of the district court in favor of Appellees.